WHOLESALE SPECIALTIES, INC., Plaintiff–Appellant and Cross–Appellee,

v.

VILLAGE HOMES, LTD.; Gateway Plumbing Co.; Andrew J. Stofan; Barbara E. Stofan; Max E. Myers; Linda Myers; Scott J. Dorsey; Kelly A. Dorsey; Bice S. Cannon; Cynthia L. Cannon; Joel Scott Fredrickson; Valerie Susan Fredrickson; Ronald Keith Tilton; Susan K. Tilton; Robert L. Ostrander; Calumet Federal Savings and Loan Association; American Federal Savings and Loan Association of Colorado; Knutson Mortgage Corporation; Maryland National Mortgage Corporation; and The Public Trustee of Jefferson County, Defendants–Appellees and Cross–Appellants.

No. 90CA1567.

Colorado Court of Appeals, Div. I.

Sept. 26, 1991.

Rehearing Denied Oct. 24, 1991.

**1172**

Wolf & Slatkin, P.C., Jessie Margedant, Denver, for plaintiff-appellant and cross-appellee.

Heyl, Stephens & Starr, Littleton, for defendants-appellees and cross-appellants.

Opinion by Judge DAVIDSON.

In this action to foreclose certain mechanics' liens, plaintiff, Wholesale Specialties, Inc. (Wholesale), appeals from a judgment entered after a bench trial in favor of defendants Village Homes, Ltd. (Village), Andrew J. Stofan, Barbara Stofan, Max E. Myers, Linda Myers, Scott J. Dorsey, Kelly A. Dorsey, Bice S. Cannon, Cynthia L. Cannon, Joel Scott Frederickson, Valerie Susan Frederickson, Ronald Keith Tilton, Susan K. Tilton (homeowners) and defendants Calumet Federal Savings and Loan, Knutson Mortgage, and Maryland National Mortgage. The trial court determined that the liens were unenforceable because homeowners had proven the affirmative defense of payment as provided by § 38–22–102(3.5), C.R.S. (1990 Cum.Supp). Homeowners cross-appeal from the denial of their request for attorney fees. We affirm.

The facts as found by the trial court are not in dispute. Defendant Village, developer and principal contractor, hired a subcontractor to install plumbing in certain residential homes under construction. In 1985, the plumbing subcontractor began incorporating into the homes materials and fixtures obtained from Wholesale, a plumbing supply company.

Village paid the plumbing subcontractor in full for its work on the homes, but the plumbing contractor failed to pay Wholesale. Village subsequently sold six of the homes to homeowners who paid full purchase price for their homes. Because Wholesale was not paid for the materials and fixtures, it filed mechanics' liens on January 9, 1989, against the six separate properties.

At trial, homeowners asserted the affirmative defense of payment pursuant to § 38–22–102(3.5), C.R.S. (1990 Cum.Supp.). That statute states in relevant part:

"[I]t shall be an affirmative defense in any action to enforce a lien pursuant to this article that the owner or some person acting on his behalf has paid an amount sufficient to satisfy the contractual and legal obligations of the owner, including the initial purchase price or contract amount ... to the principal contractor or any subcontractor for the purpose of payment to the subcontractors or suppliers of materials or services to the job, when,

. . . .

(c) The property is a single family, owner-occupied dwelling unit, including a residence constructed and sold for occupancy as a primary residence."

The trial court found that this affirmative defense applies to Wholesale's liens and that homeowners proved all elements of the statute. This appeal followed.

I.

As a threshold matter, we first address Wholesale's argument that § 38–22–102(3.5) does not apply to its liens because the statute was enacted after the liens came into existence.

Section 38–22–102(3.5) became effective May 25, 1987, and applies to all liens "arising on or after such date." Colo. Sess.Laws 1987, ch. 276, § 38–22–102 at 1336. Wholesale contends that its liens

"arose" in 1985 when it began providing materials to the homes in question. Homeowners, on the other hand, argue that the liens "arose" on January 9, 1989, when Wholesale perfected its liens. We agree with homeowners.

■ The mechanics' liens statutes, §§ 38–22–101, et seq., C.R.S. (1982 Repl. Vol. 16A), are designed to benefit and protect subcontractors, materialmen, and laborers who are hired to improve or construct structures on the land of another. *Trustees of Mortgage Trust v. District Court*, 621 P.2d 310 (Colo.1980). To be entitled to a lien upon the owner's property, however, the claimant must perfect his lien by filing a lien statement and otherwise complying with § 38–22–109, C.R.S. (1982 Repl.Vol. 16A). *Richter Plumbing & Heating, Inc. v. Rademacher*, 729 P.2d 1009 (Colo.App.1986). Until these statutory steps are taken, the rights the lien claimant has are merely inchoate. *Schradsky v. Dunklee*, 9 Colo.App. 394, 48 P. 666 (1897). Accordingly, a lien does not ripen until it has been perfected. *Schradsky, supra.*

■ Wholesale argues, however, that its liens did "arise" in 1985 because they relate back pursuant to § 38–22–106(1), C.R.S. (1982 Repl.Vol. 16A), which states that all "liens established by virtue of this article shall relate back to the time of the commencement of work." Wholesale's reliance on this statute is misplaced for two reasons.

First, for there to be relation back there must be an established lien. An established lien is one that is perfected. *See In re Cantrup*, 38 B.R. 148 (Bankr.D.Colo. 1984); *Orman v. Crystal River Ry. Co.*, 5 Colo.App. 493, 39 P. 434 (1895).

Second, § 38–22–106(1) applies only when there is a priority dispute. A priority dispute occurs when different lien claimants and creditors have interests in the same property. *See Orman v. Crystal River Ry. Co., supra.* As to those claiming priority of liens, once perfected, a mechanic's lien relates back in time to the commencement of work, thus gaining a preference over other liens and interests in the land

which may have been recorded prior to the actual filing of the mechanic's lien. *Trustees of Mortgage Trust v. District Court, supra.* Because we are not concerned with issues of priority here, § 38–22–106(1) is irrelevant.

## II.

Wholesale next contends that the evidence was insufficient to establish the affirmative defense of payment. Specifically, Wholesale argues that § 38–22–102(3.5) requires proof of a specific intent on the part of the homeowners that the purchase price paid for the homes be "for the purpose of payment to the subcontractors and suppliers" and that homeowners presented no evidence of such intent. Again, we disagree.

■ A statute must be given effect according to the intent of the General Assembly. *Danielson v. Castle Meadows, Inc.*, 791 P.2d 1106 (Colo.1990). If the legislative intent is clear from the plain language of the statute, the courts must give effect to the statute according to its plain language, but if the statutory language is ambiguous, a court must construe the statute according to the legislative intent underlying the statute. *Danielson v. Castle Meadows, supra.*

■ Statutory language is ambiguous if it is reasonably susceptible to more than one meaning. *Danielson v. Castle Meadows, Inc., supra.*

■ Here, it is unclear whether the phrase "for the purpose of payment to the subcontractors and suppliers" requires that the amount paid by the owner be sufficient to enable the principal contractor to pay the subcontractor or requires that the homeowner specifically intend that result. Applying the foregoing principles of statutory construction, we agree with the trial court that the latter interpretation is completely contrary to legislative intent.

Before the enactment of § 38–22–102(3.5), the mechanics' lien act provided only limited protection to individual homeowners who had paid full price purchase

price for their homes to avoid additional payment for release of mechanics' liens. For example, if the owner is a bona fide purchaser of a single or double-family dwelling, lien claimants are required to file their lien in a shorter time period. Section 38–22–125, C.R.S. (1982 Repl.Vol. 16A). Or, by writing and filing a contract in accordance with statutory requirements, an owner contracting for work on his or her home can limit liability to the contract price. *See* §§ 38–22–101(2), 38–22–102(7), C.R.S. (1982 Repl.Vol. 16A). An uninformed owner, however, who is not aware of these provisions may end up, in effect, paying twice for a home.

In contrast, § 38–22–102(3.5) protects an owner of a single-family home who has paid the purchase or contract price from subsequent mechanics' liens filed on the property. And, under the statute, the defense is available to owners of existing homes who contract for improvements, homeowners who contract for construction of a new home, and homeowners who purchase a newly constructed home. Also, § 38–22–102(3.5) contains no technical prerequisites requiring action of the homeowner, such as filing the contract. All that is required is payment of the purchase or contract price.

◼ If there is a dispute as to the meaning of a statute, we must consider the results of the construction urged. *People in Interest of K.M.J.,* 698 P.2d 1380 (Colo. App.1984) Plaintiff proffers an interpretation of § 38–22–102(3.5) which requires us to read into the statute a distinction between homeowners sufficiently sophisticated to express intent that the payment be paid to subcontractors and inexperienced homeowners who are not. This we cannot do. We presume that the General Assembly intended a result which is just and reasonable, not illogical. *See Molnar v. Law,* 776 P.2d 1156 (Colo.App.1989).

Moreover, a review of the legislative history confirms that the General Assembly did not intend any such distinction. Senator Wells, a cosponsor of this statute, stated in the hearing on the amendment: "If the homeowner pays his bills, [this provi-sion] makes the benefit automatic.... [This statute] prevents the homeowner from paying for the house twice because the contractor didn't pay the bills." *See* Hearings on S.B. 199 before the House Legislative Finance Committee, 56th General Assembly, 1st Session (March 24, 1987). In addition, Senator Wells stated: "[W]here the owner actually pays the contractor for the contract price ... the subcontractor's remedy would be to go back against the contractor and not be allowed to put a lien against the private owner's property." *See* Hearings on S.B. 199 before the House Legislative Finance Committee, 56th General Assembly, 1st Session (March 24, 1987).

Accordingly, we conclude that the statute does not require proof of specific intent by homeowners upon payment of the purchase price that the subcontractors be paid. Therefore, the decision of the trial court was correct.

### III.

◼ Finally, Wholesale argues that § 38–22–102(3.5) is unconstitutional because it treats similar classes of construction-associated personnel dissimilarly in determining whether a party's lien is valid.

Even if we have jurisdiction to do so, we do not reach Wholesale's constitutional challenge because it did not raise this issue at trial. This court will not consider an issue raised for the first time on appeal. *Colgan v. State Department of Revenue,* 623 P.2d 871 (Colo.1981); *Gilpin Investment Co. v. Blake,* 712 P.2d 1051 (Colo. App.1985).

### IV.

On cross-appeal, homeowners contend they are entitled to attorney fees pursuant to § 13–17–101, C.R.S. (1987 Repl.Vol. 6A). We disagree.

◼ An award of attorney fees is required if the trial court determines that a claim is frivolous or groundless. *See Pedlow v. Stamp,* 776 P.2d 382 (Colo.1989). Here, the trial court concluded that the statute was "sufficiently confusing" to jus-

tify the bringing of this lawsuit. In view of our conclusion that § 38–22–102(3.5) is ambiguous, we agree that Wholesale's assertion of those claims cannot be considered substantially frivolous or groundless within the meaning of § 13–17–102.

Homeowners also contend that attorney fees should be awarded pursuant to § 38–22–128, C.R.S. (1982 Repl.Vol. 16A), which provides for an award of attorney fees for the filing of excessive liens. Although this provision appears to be inapplicable in this case, even if an award were otherwise appropriate, we find nothing in the record before us to show that this issue was raised in the trial court. Therefore we do not address it. *First National Bank v. Union Tavern Corp.*, 794 P.2d 261 (Colo. App.1990).

The judgment is affirmed.

PIERCE and MARQUEZ, JJ., concur.