**FLOORING DESIGN ASSOCIATES, INC., Plaintiff–Appellee,**

v.

**Edward M. NOVICK, Defendant–Appellant.**

No. 94CA0204.

Colorado Court of Appeals, Div. I.

Dec. 7, 1995.

Rehearing Denied Feb. 29, 1996.

Certiorari Denied Sept. 23, 1996.

Elrod, Katz, Preeo, Look, Moison & Silverman, P.C., Eldon E. Silverman, Gilbert R. Egle, Denver, for Plaintiff–Appellee.

Ireland, Stapleton, Pryor & Pascoe, P.C., Monte Pascoe, Scot M. Peterson, Denver, for Defendant–Appellant.

Opinion by Judge METZGER.

Defendant, Edward M. Novick, appeals the judgment entered, after a trial to the court, finding him personally liable to plaintiff, Flooring Design Associates, Inc., for corporate debts of Novick Homes at Broomfield, Inc., and Novick Homes—H.R., Inc. (the corporations). We affirm.

Novick characterized the corporations as "merchant home builders." After obtaining an option on unimproved land, the corporations built residential dwellings on the land, exercised the option, and sold the finished homes.

The corporations' general business practice began by the signing of an option contract with a prospective home buyer who would pay the corporation $1,000 in earnest money. The prospective buyer would then apply for mortgage funds. Once the mortgage loan was approved, the corporations would seek construction loans, usually from the same lender, to build the homes. After approval of these loans, the corporations constructed the homes, using subcontractors in the construction process. Upon completion of construction, at the closing of the sale to the home buyer, the corporations received the balance of the contracted purchase price. At this point, the corporations would pay any remaining debts to subcontractors.

Flooring Design is a subcontractor that had entered into two contracts with the corporations for the installation of flooring, tile, and countertops in several of the homes. There is no dispute that Flooring Design completed its work satisfactorily and that it provided both labor and materials.

In 1991, during the construction of a series of new homes, the corporations began to experience severe financial difficulties. After construction was completed and the homes had been sold, the corporations still owed Flooring Design $37,251.72. The corporations' financial difficulties became more acute, and they ceased all business in late 1991 without paying this debt.

Thereafter, Flooring Design brought this breach of contract action, and, after a trial to the court, judgment was entered against the corporations and Novick, personally, for the

full amount. Novick appeals the trial court's decision finding him personally liable on the debt. The corporations are not a party to this appeal.

## I.

Novick first contends that the trial court erred in determining that payments the corporations received at the home closings were subject to a statutory trust as provided in § 38–22–127(1), C.R.S. (1982 Repl.Vol. 16A). We find no error.

Section 38–22–127(1) requires:

All funds disbursed to any contractor or subcontractor under any building, construction, or remodeling contract or on any construction project shall be held in trust for the payment of subcontractors, material suppliers, or laborers who have furnished materials, services, or labor, who have a lien, or may have a lien, against the property, or who claim, or may claim, against a principal and surety under the provisions of this article and for which such disbursement was made.

## A.

Relying on the definition of "disburser" in § 38–22–126(1), C.R.S. (1982 Repl.Vol. 16A), Novick asserts that the trial court erred in determining that funds paid to the corporations at the closing of new home sales were "disbursements" within the meaning of § 38–22–127(1). We disagree.

Section 38–22–126(1) states:

*For the purposes of this section,* the word 'disburser' means any lender who has agreed to make any loan to the owner or contractor, the proceeds of which are to be disbursed from time to time as work upon a structure or other improvement progresses, or any part of which is to be withheld until all or any part of such work is completed; or, any person who receives funds from any lender, contractor, or owner to be disbursed from time to time as work upon a structure or other improvement progresses, or any part of which is to be withheld until all or any part of such work is completed; or, any owner who has agreed to pay any sum to any contractor from time to time as work upon a structure or other improvement progresses, or any part of which is to be withheld until all or any part of such work is completed. (emphasis added)

The mere fact that the same word or phrase is used in two closely related statutes does not necessitate the conclusion that the same meaning is to be attached in both, or that the General Assembly understood the use of the words or phrases to mean the same in both instances. *See Brofman v. Industrial Commission,* 117 Colo. 248, 186 P.2d 584 (1947).

A statute must be given effect according to the intent of the General Assembly. If the legislative intent is clear from the plain language of the statute, a court must give effect to the statute according to its plain language. *Wholesale Specialties, Inc. v. Village Homes, Ltd.,* 820 P.2d 1170 (Colo.App.1991).

Legislative intent may be ascertained by considering disputed language in the context of the entire statute, its objective, and the consequences that would follow any particular construction of the statute. *City & County of Denver v. Board of Assessment Appeals,* 748 P.2d 1306 (Colo.App.1987). In discerning the intent of the General Assembly, we must presume that it intended a result which is just and reasonable, not illogical. *Wholesale Specialties, Inc. v. Village Homes, Ltd., supra.*

Applying these general principles of statutory construction to the statutes and facts here, we conclude that Novick's argument must be rejected.

First, we consider it to be important that the narrow definition of "disburser" in § 38–22–126(1) is preceded by the phrase "For the purposes of this section." This plain language needs no interpretation and evidences a legislative intent to limit that specific definition of "disburser" to § 38–22–126 only.

Second, the objectives of § 38–22–126 differ markedly from those of § 38–22–127. Thus, we cannot presume, as Novick argues, that the term "disburser" applies with equal force to each statute.

Section 38–22–126, first enacted in 1965, imposes duties on a disburser to see that subcontractors receive payment for their labor and materials. It requires, in § 38–22–126(6), C.R.S. (1982 Repl.Vol. 16A) that, upon appropriate notice, the disburser pay the subcontractor directly rather than paying the contractor.

In contrast, § 38–22–127, enacted in 1975, focuses on instances in which the contractors have already been paid. By its language it extends to "all funds disbursed" and to "any" building or construction project. Its purpose is to protect homeowners, laborers, and providers of construction materials from dishonest or profligate contractors. *People v. Collie,* 682 P.2d 1208 (Colo.App.1983). To meet this purpose, it imposes duties on the contractors to see that the subcontractors are paid.

Therefore, in light of the differences between the objectives sought to be achieved by §§ 38–22–126 and 38–22–127, we see no reason to limit the import of the latter by merging its terms with the former. *Brofman v. Industrial Commission, supra.*

Finally, because we believe that the consequences of adopting Novick's assertion would be antithetical to the General Assembly's intent, we reject it.

In reaching this conclusion, we note that the overriding purpose of the mechanics' lien law is to benefit and protect subcontractors, material providers, and laborers who are hired to improve or construct structures on the land of another. *Wholesale Specialties, Inc. v. Village Homes, Ltd., supra.* We are also in agreement with the trial court's resolution of the issue.

After a thorough and well-reasoned analysis of the evidence and the pertinent law, the trial court summarized the effect of Novick's argument as follows:

> The last sub-contractors on the job frequently would not be able to submit their invoices until after the closing date. Since the construction loan account was closed by the lending institution no later than the closing date, sub-contractors in Plaintiff's position could not possibly have monies set aside out of the 'disbursement' from the

lending institution from the construction loan. Therefore, under the narrow definition of 'disbursement' employed by defendant, sub-contractors performing their contractual obligations near the end of each project would frequently find themselves unprotected by [§ 38–22–127].

. . . .

The applicability of the trust provision to merchant home builders is further necessitated by the passage of C.R.S. 38–22–102(3.5) in 1987. That provision gives home buyers an affirmative defense in an action to enforce a lien if the home buyer paid full price for the home to the principal contractor. As applied to the case before the court, all thirteen home buyers would have been able to defeat any claim brought by Plaintiff to enforce a lien filed against their property. Given this erosion of remedies for unpaid subcontractors, the importance of applying the trust fund provisions to merchant home builders is obvious.

In summary, we find no error in the trial court's determination that the definition of "disburser" in 38–22–126(1) does not apply to § 38–22–127. The limiting language at the beginning of § 38–22–126(1) is a clear demarcation of the term, and we find no reason to apply it to any other statutory section. Additionally, § 38–22–126 addresses a factual situation entirely different from that covered by § 38–22–127. Finally, the practical effect of engrafting the definition would be to defeat the utility of the mechanics' lien statute for the last subcontractors on a job. Accordingly, we hold that the definition of "disburser" in § 38–22–126 does not apply to § 38–22–127.

**B.**

Novick next asserts that the trial court erred in determining that the corporations were "contractors" under § 38–22–127(1). He attempts to draw a distinction between merchant homebuilders and contractors. Since merchant homebuilders own the land on which they construct homes, he argues that they cannot be contractors. We do not find significance in this distinction.

When a seller employs subcontractors for the purpose of building a house on land owned by the seller, and constructs the house with the purpose of selling it after completion, the seller is acting as a general contractor. *Cf. Koch Plumbing & Heating, Inc. v. Brown*, 835 P.2d 610 (Colo.App.1992) (holding that vendor-builder of new home was a contractor in its relationship with buyers of new home for purposes of § 38–22–102(3.5)); *see also Mazurek v. Nielsen*, 42 Colo.App. 386, 599 P.2d 269 (1979).

Here, the corporations entered into contracts with buyers to construct homes. Buyers paid earnest money to the corporations and applied for mortgages pursuant to purchase agreements. The corporations contracted with subcontractors, including Flooring Design, to work on the homes. The corporations were referred to as "General Contractor" in their contracts with Flooring Design. The corporations received construction loans to buy materials and to pay subcontractors. Hence, in every significant way, the corporations operated as contractors in their relationship with Flooring Design. *See generally Koch Plumbing & Heating, Inc. v. Brown, supra.*

## C.

Novick next asserts that, even if the payment of funds at closing of a new home sale was a "disbursement," the trial court erred in finding that the debt owed to Flooring Design by the corporations was a debt "for which such disbursement was made." He bases this assertion on the premise that a trust is created under § 38–22–127(1) only when the disburser of funds *intends* that a trust be created. We reject the premise and the conclusion of this argument.

Section 38–22–127(1) requires that funds disbursed to a contractor be held in trust for payment of subcontractors "for which such disbursement was made."

In *Wholesale Specialties, Inc. v. Village Homes, Ltd., supra*, a division of this court rejected a similar argument concerning § 38–22–102(3.5), C.R.S. (1995 Cum.Supp.). That statute provides that:

[I]t shall be an affirmative defense in any action to enforce a lien pursuant to this article that the owner ... has paid an amount sufficient to satisfy the contractual and legal obligations of the owner, including the initial purchase price or contract amount plus any additions or change orders, to the principal contractor or any subcontractor *for the purpose of payment to the subcontractors* or suppliers of materials or services to the job.... (emphasis added)

Based on an analysis of the plain meaning and legislative history of § 38–22–102(3.5), the division held that a distinction between "homeowners sufficiently sophisticated to express intent that the payment be paid to subcontractors and inexperienced homeowners who are not" would be illogical and inconsistent with the General Assembly's intent in enacting the mechanics' lien statutes. *Wholesale Specialties, Inc. v. Village Homes, Ltd., supra*, 820 P.2d at 1174.

Here, to read the phrase in § 38–22–127(1) to require that disbursers must specifically intend that disbursement funds be used to pay subcontractors before a statutory trust can arise for the benefit of the subcontractors would be similarly inconsistent. Such a distinction would permit a trust to arise only when the subcontractors were able to prove specific intent. Such an arbitrary classification would not be consistent with either the broad remedial purposes underlying both the mechanics' lien statute in general, *see Ragsdale Brothers Roofing, Inc. v. United Bank*, 744 P.2d 750 (Colo.App.1987), and the specific provisions of § 38–22–127(1). *See People v. Collie, supra; see also First Commercial Corp. v. First National Bancorporation, Inc.*, 572 F.Supp. 1430 (D.Colo.1983).

Therefore, for a subcontractor to avail itself of § 38–22–127, it need not be shown that the disburser of funds specifically intended that a trust be created; nor need it be shown that the disburser intended the disbursements to be allocated for the payment of subcontractors. *See generally* 1 A. Scott, *Trusts* § 17.5 (3d ed. 1967) (as a general rule, statutory trusts do not require demonstration of settlor's intent to create a trust).

We agree with the trial court's conclusion that the funds paid to the corporations were disbursements that were to be held in trust for Flooring Design.

## II.

 Finally, Novick contends that the trial court erred in concluding that he was personally liable for the corporations' debts to Flooring Design. We disagree.

The trial court relied on *Alexander Co. v. Packard,* 754 P.2d 780 (Colo.App.1988). There, a corporate vice-president controlled corporate finances and made the corporation's financial decisions. The corporation had received funds from Alexander Company for completed work. However, the vice-president diverted those funds from their intended purpose of paying suppliers and used them to pay the corporation's general obligations. There was no evidence that the vice-president personally gained from the diversion of funds. Nevertheless, a division of this court concluded that, pursuant to the trust obligations imposed by § 38–22–127, the vice-president was personally liable for the corporation's breach of trust to pay its suppliers from the funds it had received from the Alexander Company.

Here, the record shows that Novick made financial decisions for the corporations and controlled their finances. Funds received from the sales of homes were not held in trust pursuant to § 38–22–127 to pay debts. Instead, these funds were diverted for other purposes, such as: payments on corporate vehicles, repayment of a corporate loan to an entity in which Novick was an investor, corporate credit cards, and payment for Novick's personal health club membership, which he used for business purposes.

. The record fully supports the trial court's conclusion that Novick breached the statutory trust relationship by diverting the trust funds to other corporate obligations, thus depriving Flooring Design of compensation for services rendered and materials provided. As a result, he is personally liable. *Alexander Co. v. Packard, supra; cf. Standley v.*

*American Automobile Insurance Co.,* 136 Colo. 70, 314 P.2d 696 (1957).

The judgment is affirmed.

PLANK and TAUBMAN, JJ., concur.