CRISSEY FOWLER LUMBER COMPANY, a Colorado corporation; Transit Mix Concrete Company; Annie G. Taylor; Arlington E. Taylor; and Rustic Floor Covering, d/b/a The Wetta Corporation, Plaintiffs–Appellees,

v.

FIRST COMMUNITY INDUSTRIAL BANK, Defendant–Appellant.

No. 97CA2167.

Colorado Court of Appeals, Div. V.

Feb. 3, 2000.

Rehearing Denied April 6, 2000.

Certiorari Denied Sept. 11, 2000.

Anderson, Dude & Lebel, P.C., Stephen J. Lebel, Colorado Springs, Colorado, for Plaintiffs–Appellees Crissey Fowler Lumber Company and Transit Mix Concrete Company.

Tom W. Armour, Twin Lake, Michigan, for Plaintiffs–Appellees Annie G. Taylor and Arlington E. Taylor.

Kleinsmith & Associates, P.C., Philip M. Kleinsmith, Colorado Springs, Colorado, for Plaintiff–Appellee Rustic Floor Covering d/b/a The Wetta Corporation.

Vaglica & Meinhold, L.L.C., Don H. Meinhold, Su–Lyn Combs, Colorado Springs, Colorado, for Defendant–Appellant First Community Industrial Bank.

Opinion by Judge DAVIDSON.

Defendant, First Community Industrial Bank (FCIB), appeals from the trial court's entry of judgment in favor of plaintiffs, Crissey Fowler Lumber Company (Crissey Fowler), Transit Mix Concrete Company (Transit Mix), Annie G. and Arlington E. Taylor (Taylors), and Rustic Floor Covering, d/b/a The Wetta Corporation (Rustic). The court found that under § 38–22–126(6), C.R.S.1999, defendant was obligated to disburse construction funds directly to plaintiffs. We affirm.

FCIB was the construction lender for a number of prospective homeowners in a housing development project. Plaintiffs include several of the subcontractors and the Taylors, who were among the prospective homeowners. Construction began early in 1995. In November 1995, prior to completion, the general contractor, Craftmark, abandoned the project. The homeowners were forced to hire a new general contractor and new subcontractors to complete construction of the homes. *See Crissey Fowler Lumber Company v. First Community Industrial Bank*, 8 P.3d 536 (Colo.App. No. 98CA2338, February 3, 2000).

In September 1995, Crissey Fowler and Transit Mix submitted disburser notices to FCIB for building materials and supplies furnished to a number of the properties. Rustic filed its notice to disburser in January 1996, after Craftmark had abandoned the project.

In late September 1995, Craftmark submitted a draw request to FCIB, which FCIB paid immediately. In October 1995, Crissey

Fowler submitted a bill to Craftmark; FCIB paid Crissey Fowler only a small portion of the amount owed on the Taylor home.

Craftmark subsequently submitted other draw requests to FCIB, allegedly for charges incurred in all seven projects. Although FCIB paid Craftmark, plaintiffs were not paid from these funds. FCIB contended in its affidavit that the funds drawn from the account were owed to "other" unspecified subcontractors.

Crissey Fowler, Transit Mix, and Rustic subsequently brought this action against FCIB, alleging that FCIB breached its duty as disburser by not paying them directly pursuant to § 38–22–126(6). The Taylors, who had paid the subcontractors out of their own funds after Craftmark abandoned the project, joined Crissey Fowler, Transit Mix, and Rustic. The Taylors' status as plaintiffs is not an issue in this appeal.

The plaintiffs filed motions for summary judgment. In granting summary judgment to plaintiffs, the trial court determined that § 38–22–126(6) required FCIB to pay plaintiffs directly upon their filing of disburser notices or to impound the disputed funds for later judicial determination.

On appeal, FCIB contends that the trial court's interpretation of § 38–22–126(6) was incorrect. We disagree.

We review a judgment granting a motion for summary judgment *de novo. Aspen Wilderness Workshop, Inc. v. Colorado Water Conservation Board*, 901 P.2d 1251 (Colo. 1995). Summary judgment is appropriate if no genuine issue as to any material fact exists and the moving party is entitled to judgment as a matter of law. The burden of showing that no such issue exists is on the moving party, and all doubts are to be resolved in favor of the nonmoving party. *Vargas v. State Farm Mutual Automobile Insurance Co.*, 916 P.2d 652 (Colo.App.1996).

I.

Section 38–22–126(6) states in pertinent part:

Upon such notice being received by the disburser, it is the duty of the disburser, before disbursing any funds to the person

designated in said notice with whom said claimant has contracted, to ascertain the amount due to the claimant on any disbursement date, and to pay such amount directly to the claimant out of any undisbursed funds available for and due to said person designated in said notice on such date; except that ... if the amount claimed by said claimant is disputed by said person designated in said notice, the disburser may impound such amount until the amount due is settled by agreement or final judicial determination.

This statute imposes duties on a disburser to see that subcontractors receive payment for their labor and materials. It requires that, upon appropriate notice, the disburser pay the subcontractor directly rather than pay the contractor. *Flooring Design Associates, Inc. v. Novick*, 923 P.2d 216 (Colo.App.1995).

It is undisputed that FCIB was the disburser. Here, as noted, the subcontractors—the claimants under the statute—served notice on FCIB, seeking payment for their services. According to § 38–22–126(6), after ascertaining the amount due to plaintiffs from the general contractor, referred to in the statute as "said person," FCIB was required to pay the plaintiffs from any undisbursed funds "available for and due to" the general contractor, or to impound such amount.

FCIB, however, did not pay plaintiffs or impound the funds. FCIB did not dispute that the notices it received were proper. Instead, FCIB argued that the statutory phrase, "available for and due to," referred only to funds owed directly to the general contractor, *e.g.*, profit, overhead, supervision and labor, funds which generally are not earned by the general contractor until construction is completed. The trial court rejected this interpretation, and so do we.

The words and phrases in statutes are to be construed according to their familiar and generally accepted meaning, and when the language of the statute is plain and its meaning clear, a court should avoid an inconsistent interpretation, and no absurdity should result. *See Harding v. Industrial Commission*, 183 Colo. 52, 515 P.2d 95 (Colo.

1973). The primary goal of statutory construction is to give effect to the intent of the legislature. *See Smith v. Myron Stratton Home*, 676 P.2d 1196 (Colo.1984).

■ Under these rules of statutory construction, we conclude that the phrase set forth in § 38–22–126(6), "available for and due to," refers to the construction loan proceeds in full, and not merely to those funds paid to the general contractor upon completion of a project.

As noted, a statute should not be read to create an absurd result. Section 38–22–126(6) plainly states that the disburser, here FCIB, should pay the claimed amount "directly to the claimant out of any undisbursed funds available for and due to" the general contractor. *See Flooring Design Associates, Inc. v. Novick, supra.* However, under the interpretation urged by FCIB, subcontractors and suppliers would have no avenue for direct payment of their fees and costs. Instead, the loan proceeds would only be available indirectly to subcontractors and suppliers should the general contractor opt to pay them after making a draw request. Under this interpretation, by not allowing for direct payment, the practical effect of the statute is completely nullified.

■ Similarly, the primary purpose of the mechanics' lien act is to benefit and protect those who supply labor, materials, or services to enhance another's property. However, under FCIB's interpretation, a subcontractor could not recoup earned monies despite a timely filing of a disburser's notice. *See Flooring Design Associates, Inc. v. Novick, supra.* Thus, FCIB's interpretation is in complete conflict with the General Assembly's expressed intent.

Moreover, the purpose of a construction loan is to provide funds to enable a property owner to construct improvements upon that property. Generally, a construction loan agreement creates a loan account from which funds are disbursed as the construction proceeds. Thus, under a construction loan such as those here, the homeowner allows the general contractor to make periodic draw requests against the loan proceeds in order to pay the expenses incurred in each period.

*See generally* G. Nelson and D. Whitman, *Real Estate Finance Law* 147, 154 (1993).

From this, it follows ineluctably that the loan proceeds are available for and due to the contractor throughout the term of the loan. Accordingly, notwithstanding FCIB's contention, the phrase "available for and due to," in the context here, indicates merely that the funds are accessible to the general contractor during the construction period.

## II.

FCIB also argues that the trial court erred in awarding plaintiffs the full amount of their losses even though a lesser amount had been disbursed to the general contractor prior to its abandonment of the project. In response, plaintiffs assert that FCIB did not raise this issue in the trial court and, therefore, did not properly preserve this issue for appeal.

■ From our review of the record, except as to one award to Crissey Fowler for $15,-000, we agree with plaintiffs. As to the latter award, the record indicates that FCIB raised a question as to that sum at a hearing to determine the amount of plaintiffs' judgment. Because FCIB only challenged this one particular award, therefore, we will not address FCIB's contention concerning damages awarded to any other plaintiff or to Crissey Fowler in the other consolidated cases. *See Bolen v. Ferry Trust*, 949 P.2d 82 (Colo.App.1997) (appellate court will not address issue on appeal when issue required factual determination and was not addressed by trial court).

■ Concerning the $15,000 award to Crissey Fowler, FCIB argued at the hearing that it should be liable for only the approximately $11,000 in charges billed by Crissey Fowler prior to its last disbursement of $45,000 to Craftmark. However, the $45,000 payment to Craftmark was the last payment to Craftmark before Craftmark abandoned the project, not the final payment of loan proceeds. In other words, the loan remained active, and funds could still be drawn from it. Thus, even though FCIB, as it turned out, had made its last payment to Craftmark, FCIB was still able to pay Crissey Fowler its further expenses directly.

Furthermore, Crissey Fowler filed its disburser notice a month and a· half before FCIB's final disbursement to Craftmark. This notice alerted FCIB and Craftmark that Crissey Fowler's total costs could be as high as $22,000. Because FCIB was aware of Crissey Fowler's potential expenses and, even after its last payment to Craftmark, its construction loan was still active, the court correctly awarded Crissey Fowler its full charges.

## III.

FCIB next contends that the trial court erred in awarding attorney fees to plaintiffs Crissey Fowler and Transit Mix pursuant to § 13–17–101 et seq., C.R.S.1999. The court found that FCIB's actions met both the frivolous and vexatious standards set forth in § 13–17–102(4), C.R.S.1999. In addition, the court determined that an award of fees was warranted under the common law "wrong of another" theory. *See Alexander Co. v. Packard*, 754 P.2d 780 (Colo.App.1988). FCIB asserts that an award of fees was improper because its arguments were based on a good faith interpretation of the law. However, since we find no error in the trial court's determination that FCIB's defense was vexatious, we need not address the other grounds relied on by the trial court to support its award of fees.

■ The trial court made extensive findings in its order and, after having reviewed the factors delineated in § 13–17–103, C.R.S. 1999, determined that an award of attorney fees was warranted. Specifically, with record support, the court found, *inter alia*, that FCIB: (1) refused to answer correspondence before these actions were filed; (2) failed to comply with discovery; (3) forced plaintiffs to engage in six lawsuits with multiple defendants, claimants, and homeowners, and involving different causes of action; (4) rested its entire case upon an unreasonable interpretation of the disburser statute; and (5) refused to discuss settlement.

■ The determination whether attorney fees should be awarded under the statute authorizing assessment of fees for a vexatious action is within the discretion of the trial court and will not be disturbed on review if it is supported by the evidence. *See M Life Insurance Co. v. Sapers & Wallack Insurance Agency, Inc.*, 962 P.2d 335 (Colo. App.1998).

Given the court's findings, we conclude that the trial court's award of attorney fees under § 13–17–102, C.R.S.1999, was proper. FCIB's defense was "stubbornly litigious," in that it forced plaintiffs to engage in multiple actions involving the same issues on which plaintiffs repeatedly prevailed. Further, the court's finding that the defense was conducted at least, in part, in bad faith, is amply supported by the record. *See Engel v. Engel*, 902 P.2d 442, 446 (Colo.App.1995).

As noted, because we agree that FCIB's actions were vexatious, we do not reach the court's other grounds for the award of fees. However, we decline plaintiffs' request for an award of attorney fees for this appeal either under § 13–17–102(4) or C.A.R. 38(d). *See Wood Bros. Homes, Inc. v. Howard*, 862 P.2d 925, 935 (Colo.1993) (under either § 13–17–101 or C.A.R. 38(d), "arguments that are extremely unlikely to prevail on appeal cannot be said necessarily to be frivolous").

## IV.

FCIB's remaining issues were not properly raised in the trial court. Therefore, we will not consider them on appeal. *See Bolen v. Ferry Trust, supra.*

The judgment is affirmed.

Judge TAUBMAN and Judge CASEBOLT concur.