CRISSEY FOWLER LUMBER COMPA-
NY; DMS Custom Counter, Inc.; Acade-
my Drywall, Inc.; Campbell Roofing,
Inc.; Window Center, Inc.; Jolly Plumb-
ing and Heating, Inc.; William W.
Schaefer d/b/a W.W. Masonry; Western
Fireplace Supply, Inc.; Can America
Drilling, Inc.; Pro Builder Supply n/k/a
Metal Industries, Inc.; and Rustic Floor
Covering, d/b/a The Wetta Corporation,
Plaintiffs–Appellees,

v.

FIRST COMMUNITY INDUSTRIAL
BANK; David L. Taylor and Sandra
K. Taylor, Defendants–Appellants.

No. 98CA2338.

Colorado Court of Appeals,
Div. V.

Feb. 3, 2000.

Rehearing Denied April 6, 2000.

Certiorari Denied Sept. 11, 2000.

Anderson, Dude & Lebel, P.C., Stephen J.
Lebel, Colorado Springs, Colorado, for Plain-
tiffs–Appellees Crissey Fowler Lumber Com-
pany and DMS Custom Counter, Inc.

Jack A. Holst, P.C., Jack A. Holst, Colora-
do Springs, Colorado, for Plaintiff–Appellee
Academy Drywall, Inc.

Dean T. Ogawa, Colorado Springs, Colora-
do, for Plaintiff–Appellee Campbell Roofing,
Inc.

Kane, Donley & Johnson, P.C., Jerry A.
Donley, Colorado Springs, Colorado, for
Plaintiff–Appellee Window Center, Inc.

Alpern Myers Stuart Scheueman, Howard
J. Alpern, Colorado Springs, Colorado, for
Plaintiff–Appellee Jolly Plumbing and Heat-
ing, Inc.

Peggy A. Hayes, Colorado Springs, Colorado, for Plaintiff–Appellee William W. Schaefer d/b/a W.W. Masonry.

William H. Wiedemann, Colorado Springs, Colorado, for Plaintiffs–Appellees Western Fireplace Supply, Inc., and Can America Drilling, Inc.

Law Offices of Phillip S. DeCaro, Phillip S. DeCaro, Colorado Springs, Colorado, for Plaintiff–Appellee Pro Builder Supply n/k/a Metal Industries, Inc.

Kleinsmith & Associates, P.C., Philip M. Kleinsmith, Colorado Springs, Colorado, for Plaintiff–Appellee Rustic Floor Covering, d/b/a The Wetta Corporation.

Vaglica & Meinhold, L.L.C., Don H. Meinhold, Su–Lyn Combs, Colorado Springs, Colorado, for Defendant–Appellant First Community Industrial Bank.

No Appearance for Defendants–Appellants David L. Taylor and Sandra K. Taylor.

Opinion by Judge DAVIDSON.

In this consolidated action, defendants, First Community Industrial Bank (FCIB), and homeowners, David L. and Sandra K. Taylor (the Taylors), appeal from the judgment entered by the trial court in favor of plaintiffs, Crissey Fowler Lumber Company; DMS Custom Counter, Inc.; Academy Drywall, Inc.; Campbell Roofing, Inc.; Window Center, Inc.; Jolly Plumbing and Heating, Inc.; William W. Schaefer d/b/a W.W. Masonry; Western Fireplace Supply, Inc.; Can America Drilling, Inc.; Pro Builder Supply n/k/a Metal Industries, Inc.; and Rustic Floor Covering, d/b/a The Wetta Corporation. The court found that § 38–22–102(3.5), C.R.S.1999, the homeowner's affirmative defense against the assertion of mechanics' liens, did not apply. We affirm.

In the trial court, the parties agreed that the claims and issues in the case of the Taylors adequately represented the common facts and issues of six other consolidated cases. They agreed, therefore, that the disposition of that case would be the law of the case in the other actions. We will, at the parties' request, also treat this appeal in the same manner.

In January 1995, the Taylors purchased property in Colorado Springs and subsequently contracted with a general contractor to build a home on the property for $135,000. The Taylors obtained a loan for $134,130 from FCIB to finance the construction.

The general contractor hired numerous subcontractors, including the plaintiffs here. In September 1995, the Taylors and the contractor entered into a change order agreement that raised the cost of the home to approximately $146,500.

The contractor continued work on the home until November 1995, when it abandoned the project without fully paying the subcontractors. At this point, through the construction loan, the Taylors had paid the general contractor approximately $130,000. *See Crissey Fowler v. First Industrial Bank,* 8 P.3d 531 (Colo.App. No. 97CA2167, February 3, 2000).

The Taylors subsequently hired a new general contractor who in turn hired new subcontractors to finish construction of the home. In January 1996, the Taylors modified and extended their loan agreement with FCIB to cover these expenses, and the bank began to make disbursements to the new contractors. In the interim, plaintiffs had recorded mechanics' liens against the Taylors' property, totaling approximately $50,000.

The parties filed cross-motions for summary judgment. Defendants claimed that § 38–22–102(3.5) protected them from the assertion of these liens.

In its order granting summary judgment to plaintiffs, the trial court determined that the Taylors could not avail themselves of the protection provided for in § 38–22–102(3.5) because they had not paid the full contract price before the liens were asserted and because they were aware of the liens before hiring a new contractor. Defendants filed this appeal.

We conclude that the trial court properly determined that defendants were not protected under § 38–22–102(3.5). Specifically, we conclude that, because defendants had paid their original contractor only part of the purchase price before the liens were

recorded, the circumstances did not trigger the intended protection of § 38–22–102(3.5) against liens filed after the payment of the full purchase price.

We review a summary judgment *de novo*. *Aspen Wilderness Workshop, Inc. v. Colorado Water Conservation Board*, 901 P.2d 1251 (Colo.1995). Summary judgment is appropriate if no genuine issue as to any material fact exists and the moving party is entitled to judgment as a matter of law. The burden of showing that no such issue exists is on the moving party, and all doubts are to be resolved in favor of the nonmoving party. *Vargas v. State Farm Mutual Automobile Insurance Co.*, 916 P.2d 652 (Colo.App.1996).

Section 38–22–102(3.5) states, in pertinent part:

> [I]t shall be an affirmative defense in any action to enforce a lien pursuant to this article that the owner or some person acting on his behalf has paid an amount sufficient to satisfy the contractual and legal obligations of the owner, including the initial purchase price or contract amount plus any additions or change orders, to the principal contractor or any subcontractor for the purpose of payment to the subcontractors or suppliers of materials or services to the job, when:
>
> . . .
>
> (b)The property is a residence constructed by the owner or under a contract entered into by the owner prior to its occupancy as his primary residence.

■ Section 38–22–102(3.5) was enacted to protect homeowners from paying for their home twice simply because a general contractor had not paid its subcontractors. Once the homeowner pays the general contractor the full purchase price, § 38–22–102(3.5) immediately applies. *Wholesale Specialties, Inc. v. Village Homes, Ltd.*, 820 P.2d 1170 (Colo.App.1991).

Defendants contend that the trial court erred in finding that they could not assert the homeowner's defense. Specifically, they argue that they are entitled to the protection provided by § 38–22–102(3.5) because they ultimately paid more than the original purchase price for their home. We disagree.

Here, as noted, defendants' original contractor abandoned the project midway without paying plaintiffs either in part or in full. At that point, defendants had paid the contractor $130,000 of the $146,500 purchase price. Thus, because they had to hire a second general contractor and new subcontractors, eventually defendants paid the original purchase price, and more, for their home. Accordingly, defendants contend, they satisfied the statutory requirement of paying "the initial purchase price or contract amount plus any additions or change orders."

Rejecting this argument, however, the trial court concluded that, because they knew of plaintiffs' liens prior to completing payment, the Taylors were in a different position from that of a homeowner who does not learn of any mechanics' liens until after full payment. The court reasoned that under the plain language of § 38–22–102(3.5), defendants could not assert the homeowner's defense because they had not paid "the initial purchase price" prior to plaintiffs' liens being recorded. We agree with that interpretation.

■ The primary goal of statutory construction is to effectuate the intent of the General Assembly. *Wholesale Specialties, Inc. v. Village Homes, Ltd., supra.* The words and phrases in statutes are to be construed according to their familiar and generally accepted meaning, and when the language of the statute is plain and its meaning clear, a court should avoid strained interpretation. *Harding v. Industrial Commission*, 183 Colo. 52, 515 P.2d 95 (Colo.1973).

Here, in pertinent part, the language of § 38–22–102(3.5) is not ambiguous. It states plainly that a homeowner may assert the affirmative defense only when he or she "*has* paid ... the initial purchase price" (emphasis added). By phrasing the payment obligation in the present perfect tense, the General Assembly intended that, prior to the assertion of the defense, the owner already must have paid the contractor the full purchase price. *See Wholesale Specialties, Inc. v. Village Homes, Ltd., supra*, 820 P.2d at 1174 ("§ 38–22–102(3.5) protects an owner who

has paid the purchase or contract price from subsequent mechanics' liens").

This is consistent with the primary purpose of the general mechanics' lien statute, which is to benefit and protect those who supply labor, materials, or services to enhance another's property. *See City of Westminster v. Brannan Sand & Gravel Co.,* 940 P.2d 393 (Colo.1997); *Skillstaff of Colorado, Inc. v. Centex Real Estate Corp.,* 973 P.2d 674 (Colo.App.1998) (discussing equitable nature of the mechanics' lien act); *Ridge Erection Co. v. Mountain States Telephone & Telegraph Co.,* 37 Colo.App. 477, 549 P.2d 408 (Colo.App.1976) (act's underlying principle is to prevent unjust enrichment).

Here, even if we use the original purchase price set by the general contractor rather than that set by the subsequent contractor to measure payment, defendants had not paid the full purchase price at the time the liens were filed.

Moreover, we disagree with defendants that, because they had incurred new, additional costs after the original contractor abandoned the project, they have paid twice for their home. To the contrary, the inequity the statute seeks to avoid is a homeowner paying the *same* costs twice. Here, however, it was undisputed that the new subcontractors did not redo plaintiffs' work, but simply finished the remaining undone work on the home. And, although aware of plaintiffs' liens, defendants did not "fully pay" for their work even once.

In light of our conclusion that the trial court properly determined that the homeowner's defense was inapplicable under the circumstances here, we need not address defendants' other contentions.

The judgment is affirmed.

Judge TAUBMAN and Judge CASEBOLT concur.