In re Ralph W. WALKER, Debtor.

Stetson Ridge Associates, Ltd. and Tri-C Construction Co., Inc., Plaintiffs,

v.

Ralph W. Walker, Defendant.

Bankruptcy No. 02–30914 EEB.
Adversary No. 03–1317 ABC.

United States Bankruptcy Court,
D. Colorado.

Sept. 17, 2004.

Kenneth P. Myers, Colorado Springs, CO, for Debtor.

Kent H. Borges, Sparks Willson Borges Brandt, et al., Stephen A. Hess, Colorado Springs, CO, for Plaintiffs.

Peter J. Lucas, Denver, CO, for Defendant.

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND RULING

A. BRUCE CAMPBELL, Bankruptcy Judge.

This adversary proceeding concerns the $176,987.73 claim of Stetson Ridge Associates, Ltd. and Tri–C Construction Co., Inc. (together "Tri–C/Stetson Ridge") against Ralph W. Walker ("Walker"). Plaintiffs seek a determination that such claim is

nondischargeable pursuant to 11 U.S.C. § 523(a)(4)[1] in Walker's Chapter 7 bankruptcy case. Tri–C Construction Co., Inc. and Stetson Ridge Associates, Ltd. were, respectively, the general contractor and owner in construction of an apartment complex in Colorado Springs, Colorado (the "Project"). Walker was a principal of a now defunct corporation that was known as Springs Construction ("Springs") and was the initial subcontractor on the Project for foundation concrete placement and construction of structural slabs.

### Procedural Background

With the demise of Springs, not only did it file Chapter 7 bankruptcy, so did its two owners, Walker and Patrick G. Riley. Walker's and Riley's bankruptcy filings spawned no fewer than four separate adversary proceedings in which Springs' creditors sought to impose personal liability on Springs' principals, and sought determinations of nondischargeability due to alleged violations of Colorado's mechanic's lien trust fund statute. Colo.Rev.Stat. § 38–22–127.[2]

Prior to entry of this Court's order consolidating four such cases for pre-trial and trial, Walker filed a motion to dismiss Tri–C/Stetson Ridge's nondischargeability claim on the grounds that Colorado's mechanic's lien trust fund statute creates claims only in favor of laborers, materials suppliers and subcontractors, but not owners or general contractors. At Walker's request, that motion to dismiss was held in abeyance by another division of this Court pending resolution of motions to consolidate the four adversary proceedings for trial. Following consolidation of the four suits for trial, two settled. The instant adversary proceeding was tried, together with *LaFarge West, Inc. v. Riley and Walker,* Adversary Proceeding No. 03–1082 ABC, on August 2 through August 5, 2004. The Court has ruled in the *LaFarge* case separately. Walker's motion to dismiss in this case has yet to be ruled on and is treated below.

The Court has jurisdiction over this matter under 28 U.S.C. §§ 1334(a) and (b) and 28 U.S.C. § 157(a) and (b)(1). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I), as it involves determination as to dischargeability of a debt.

### Tri–C/Stetson Ridge Claim and Walker Defenses

Springs' subcontract on the Project was for $798,713.00, of which Springs was paid $671,846.00 before being removed from the job. Of this amount, $342,386.33 was paid to suppliers, leaving "trust funds" of $329,459.67 to be accounted for. Tri–C/Stetson Ridge additional costs incurred or committed to date to complete the project are $41,440.42. Another $135,547.31 is at risk in a pending contested state court mechanic's lien litigation. Tri–C/Stetson Ridge thus seeks a nondischargeable judg-

---

1. 11 U.S.C. § 523(a)(4) states:
   (a) A discharge under section 727... of this title does not discharge an individual debtor from any debt—
   ....
       (4) for fraud or defalcation while acting in a fiduciary capacity....

2. Colo.Rev.Stat. § 38–22–127. "Money for lien claims made trust funds..." states in relevant part:

(1) All funds disbursed to any contractor or subcontractor under any building ... contract ... shall be held in trust for the payment of the subcontractors, laborer[s] or material suppliers ... who have a lien, or may have a lien, against the property ... and for which such disbursement was made.

ment against Walker for $176,987.73.[3]

■ Walker presented no evidence to contest (a) Tri–C/Stetson Ridge's claim that Springs breached its subcontract for concrete work, or (b) resultant damages to Tri–C/Stetson Ridge.[4] His defense instead focuses on denial of personal liability for Springs' debt, or, alternatively, legal and factual inapplicability of the mechanic's lien trust fund statute as the basis for nondischarge liability for defalcation while acting in a fiduciary capacity under Bankruptcy Code § 523(a)(4). More particularly, Walker's defenses are:

— The recent Colorado Supreme Court decision in *Leonard v. McMorris,* 63 P.3d 323 (Colo.2003), exculpates Walker from any personal liability for violation of the Colorado mechanic's lien trust fund statute.

— There is no factual basis for a determination that Springs breached the mechanic's lien trust fund statute, as trust funds were properly applied to other trust beneficiaries.

— As a matter of law, owners and contractors have no standing under the Colorado mechanic's lien trust fund statute.

Walker's first defense fails because the Colorado Supreme Court's ruling in *Leonard v. McMorris* simply does not extend to the circumstances of this case. Walker's second defense, that Springs has adequately accounted for trust funds, fails on the evidence presented. While Tri–C/Stetson Ridge has proved its claim against Springs, Walker's third defense is disposi-

tive, in his favor. The Colorado mechanic's lien trust fund statute does not create liability for statutory trust claims in favor of owners or general contractors. Accordingly, Tri–C/Stetson Ridge fails to state a claim for breach of trust that could create a debt from Walker to them that is nondischargeable under 11 U.S.C. § 523(a)(4).

### Corporate Officers' Insulation From Personal Liability Under the McMorris Case

■ The Colorado mechanic's lien trust fund statute has been interpreted for many years by Colorado courts to hold accountable officers of a corporate contractor or subcontractor who have controlled the entity's finances and actually engaged in conduct constituting the statutory breach of trust. See *Flooring Design Associates, Inc. v. Novick,* 923 P.2d 216, 221 (Colo.App.1996); *Alexander Co. v. Packard,* 754 P.2d 780, 782 (Colo.App.1988); *In re Regan,* 311 B.R. 271 (Bankr.Colo.2004) and cases cited therein. Walker readily acknowledges that throughout Springs' existence he, together with Patrick Riley, controlled all decisions concerning its cash, management and operation.

Walker maintains, however, that after the Colorado Supreme Court's recent pronouncement in *Leonard v. McMorris,* 63 P.3d 323 (Colo.2003), the Colorado mechanic's lien trust fund statute no longer imposes personal liability on those who controlled a corporation's finances where the corporation violates Colo.Rev.Stat. § 38–22–127. The *McMorris* case is dis-

---

**3.** Tri–C/Stetson Ridge suggested in closing that the Court could enter judgment for it for only the $41,440.42 that it has lost to date and allow the judgment to be supplemented up to an additional $135,547.31 depending on its future exposure on the bond it has posted in connection with the pending mechanic's lien litigation.

**4.** Walker candidly testified that at the time of the Stetson Ridge job, near the end of Springs' operations, cash was so tight, meeting payroll was a constant struggle. Springs' inability to pay its own subcontractors and suppliers resulted in liens being filed which, in turn, resulted in Springs' being asked to leave the job.

tinguishable and not controlling. It dealt with a separate Colorado statute (the Colorado Wage Claim Act) that, in identified circumstances, imposes liability on an "employer." Corporate officers were found not to be liable in the *McMorris* case. The case turned on an ambiguity found to exist by a majority of the Colorado Supreme Court concerning whether the definition in the statute of "employer" (which included an "officer" of a corporation) rendered officers liable for the corporate employer's acts that were proscribed in later sections of the statute. This Court, like the court in *Regan* cited above, does not read *McMorris* so expansively as to interpret Colorado law now as exculpating from liability corporate officers who personally perpetrate a breach of fiduciary duty while acting as corporate agents.

### Application and Accounting for Trust Funds

Tri–C/Stetson Ridge has admitted that approximately half of the trust funds that it paid to Springs under their subcontract were, in turn, expended by Springs on proper trust beneficiaries, namely Springs' materials suppliers for the Project. Walker argues that the entire $671,846.00 that was received in trust by Springs from Tri–C/Stetson Ridge was expended on beneficiaries under the statutory trust. Walker and Riley testified that typically labor accounted for about half of Springs' cost on all jobs, and that Springs paid in full all of its labor costs on this job. If there were unpaid suppliers, Walker maintains, this was a result not of diversion of trust funds, but of Springs' lack of skill in bidding this subcontract at less than its own costs.

While there is a certain compelling logic to Walker's argument, it falls short of Springs' statutory duty to account for trust funds disbursed to it. Walker offered no

evidence concerning the actual application to labor costs of funds disbursed to Springs by Tri–C/Stetson Ridge. The evidence was that such trust funds were used by Springs not only to pay for labor and materials on projects, but were also routinely used for other legitimate costs of doing business, from office staff and executive compensation to rent, debt service and capital expenses.

Once trust funds are identified as having been disbursed to a contractor or subcontractor on a particular project, the burden to account for their proper disposition under Colo.Rev.Stat. § 38–22–127 rests squarely on the contractor or subcontractor, in this case Springs and its principals who controlled the funds. The inability to meet that burden constitutes a breach of fiduciary duty. *In re Storie*, 216 B.R. 283, 288–89 (10th Cir. BAP 1997).

### Standing of Owners and General Contractors Under the Colorado Mechanic's Lien Trust Fund Statute

Walker asserts that even if Springs' inability adequately to account for statutory trust funds under Colo.Rev.Stat. § 38–22–127 renders Springs and Walker liable for defalcation to beneficiaries of that trust, Tri–C/Stetson Ridge are not among those beneficiaries. Pursuant to this statute, funds disbursed to any contractor or subcontractor ". . . shall be held in trust for the payment of subcontractors, laborer[s] or material suppliers. . . ." No where does the statute call for funds to be held in trust for owners, such as Stetson Ridge, or general contractors, such as Tri–C.

Tri–C/Stetson Ridge responds by pointing out that the party who ultimately benefits from this statute is often the property owner. The Colorado General Assembly's scrutiny of contractors and subcontractors in imposing fiduciary duties upon them to pay their subcontractors, laborers, and

suppliers "who have a lien or may have a lien," benefits property owners by protecting them from double payment. A purpose of this statute may well be to help owners avoid first, payment of trust funds to a contractor, and then payment of those with lien rights who were supposed to be paid with the trust funds by the contractor.

Several state and federal cases dealing with Colorado's mechanic's lien trust fund statute refer to the legislative purpose of protecting subcontractors, suppliers, laborers *and property owners*. See *Flooring Design Associates, Inc. v. Novick*, 923 P.2d 216, 219 (Colo.App.1996); *Wholesale Specialties, Inc. v. Village Homes, Ltd.*, 820 P.2d 1170, 1173 (Colo.App.1992); *First Commercial Corp. v. First National Bancorporation, Inc.* 572 F.Supp. 1430, 1434 (D.Colo.1983); *In re Regan*, 311 B.R. 271, 276 (Bankr.Colo.2004); *In re Specialized Installers, Inc.*, 12 B.R. 546, 551 (Bankr. Colo.1981). In a frequently cited case, this Bankruptcy Court, in recognizing standing of a property owner under the Colorado mechanic's lien trust fund statute, concluded that, "... it is the property owner who is the principal beneficiary of the statutory trust." *In re Specialized Installers, Inc.*, at 551.[5]

In a case that gives little attention to the issue of standing, the Colorado Court of Appeals held in *Alexander Co. v. Packard*, 754 P.2d 780 (Colo.App.1988), that a general contractor who applies funds received from an owner to general business expenses, as opposed to potential lien claimants, is liable to the owner of both breach of the mechanic's lien trust fund statute and a constructive trust.

■ In declining to follow these cases,[6] this Court is instructed not only by the plain language of Colo.Rev.Stat. § 38–22–127(1), but also by the analysis of the Tenth Circuit in the case of *In re Young*, 91 F.3d 1367 (10th Cir.1996). *Young*, which concerned discharge of a lawyer's debt to his client, did not involve the Colorado mechanic's lien trust fund statute. It held that unless a fiduciary relationship arises from an express or technical trust under which property or funds are entrusted to the debtor, § 523(a)(4) would not provide an exception to discharge in bankruptcy. A general fiduciary duty, of lawyer to client in *Young*, is insufficient to support nondischargeability for defalcation by a fiduciary.

In order for § 523(a)(4) to prevent discharge of a debt under *Young*, a creditor

**5.** The United States District Court for the District of Colorado states the same conclusion in *dicta* in *First Commercial Corp. v. First National Bancorporation, Inc.*, 572 F.Supp. 1430, 1434 (D.Colo.1983). This case held that a contractor's secured creditor's perfected security interest in the contractor's accounts was inferior to the rights of a *subcontractor* with Colo.Rev.Stat. § 38–22–127 trust rights. Standing of an owner or contractor as a claimant under the trust fund statute was not at issue. In the absence of clear legislative history to the contrary, it is inappropriate to presume that the Colorado General Assembly meant anything other than what it plainly said. There is no reason to assume that because subcontractors, laborers and suppliers have mechanic's lien rights under Colorado law, and owners do not, the "principal," but

unmentioned beneficiary of the Colorado mechanic's lien trust fund statute is the property owner. *Contra, In re Specialized Installers, Inc., supra.* It is just as plausible to posit that property owners were omitted from this trust fund statute because, unlike suppliers, property owners in the first instance control how funds will be disbursed and thus have some capacity to protect themselves from liens before disbursing trust funds to contractors.

**6.** Where a state supreme court has not interpreted a provision of that state's statutes, a federal court is to predict how the state's highest court would do so. See *U.S. v. De-Gasso*, 369 F.3d 1139, 1145–46 (10th Cir. 2004).

must establish two elements. The first is the existence of "a fiduciary relationship between [plaintiff/creditor] and [defendant/debtor]," arising under an express or technical trust. 91 F.3d at 1371. Cases decided after *Young* are clear that the statutory trust created under Colo.Rev. Stat. § 38–22–127 is such an "express or technical trust" that puts § 524(a)(4) into play under *Young*. See *In re Storie*, 216 B.R. 283 (10th Cir. BAP 1997).

It is, however, equally clear from the language of Colo.Rev.Stat. § 38–22–127(1) exactly between whom the "express or technical trust" of this statute creates a fiduciary relationship:

> All funds disbursed to any contractor or subcontractor . . . shall be held in trust *for* the payment of . . . *subcontractors, laborer[s]* or *materials suppliers . . .*. (emphasis added)

Conspicuously absent from those between whom, or in whose favor, a fiduciary relationship is created by this statute are "owners" or "general contractors."[7]

This does not mean that a contractor who diverts funds earmarked for a subcontractor, laborer, or supplier with lien rights will not have liability to the property owner for breach of contract, for conversion, or even for violation of a constructive trust. But that does not put the property owner within the purview of the Colorado mechanic's lien trust fund statute, where the property owner was unquestionably omitted by the Colorado General Assembly. This may result, in some circumstances, in a property owner whose misplaced trust in a faithless or incompetent contractor is rewarded with discharge of the resultant debt in the contractor's

bankruptcy. Such a result, while unfortunate, is not justification for the Bankruptcy Court to pick up where the Colorado General Assembly left off and add property owners or general contractors to the identified beneficiaries under the Colorado mechanic's lien trust fund statute.

As stated by the Tenth Circuit in *Young,*

> . . . [N]either a general fiduciary duty of confidence, trust, loyalty, and good faith, . . . nor an inequality between the parties' knowledge or bargaining power, . . . is sufficient to establish a fiduciary relationship for purposes of dischargeability.

> 91 F.3d at 1372.

Under the Colorado mechanic's lien trust fund statute, there exists no fiduciary relationship between Stetson Ridge Associates, Ltd. or Tri–C Construction Co., Inc., on the one hand, and Springs or Walker, on the other. Neither the pleadings nor the evidence in this case present any other basis for plaintiffs' claims against Walker, individually. Accordingly, it is

ORDERED that plaintiffs' claims against Walker for amounts due under the subcontract with Springs and for a determination that such amounts are debts nondischargeable in Walker's bankruptcy case are DISMISSED; and it is

FURTHER ORDERED that Walker is awarded his costs in this matter.

---

7. The fact that the specified beneficiaries of this statutory trust are subcontractors, laborers and suppliers ". . . who have a lien, or may have a lien, against the property . . ." makes it apparent that the omission by the Colorado General Assembly of property owners from identified statutory trust beneficiaries was not inadvertent. Property owners do not have liens against their own property. See fn. *2, supra.*