627 P.2d 1088

SEVEN G RANCHING COMPANY, an Arizona corporation; Redlog Investment Company, an Arizona corporation; and Heritage Building Corporation, an Arizona corporation, dba Twin Lakes Development Company, an Arizona joint venture, Plaintiffs/Appellees/Cross Appellants,

v.

STEWART TITLE & TRUST OF TUCSON, an Arizona corporation, individually and as Trustee under Trust No. 0284, Defendant/Appellant/Cross Appellee,

and

Charles Jackson, a married man, Defendant/Cross Appellee.

No. 2 CA–CIV 3680.

Court of Appeals of Arizona, Division 2.

Feb. 23, 1981.

Rehearing Denied April 15, 1981.

Corey & Kittle, P. C. by Patrick J. Farrell, Tucson, for plaintiffs/appellees/cross appellants.

Molly, Jones, Donahue, Trachta, Childers & Mallamo, P. C. by Gary F. Howard, Tucson, for defendant/appellant/cross appellee.

## OPINION

HOWARD, Judge.

The main issue in this appeal is whether a trustee is guilty of bad faith if it settles a lawsuit involving the trust property over the objection of the beneficiary.

We shall consider the operative facts in the light most favorable to upholding the judgment of the trial court. In 1976 Home Federal Savings & Loan Association (Home) sued to foreclose the mortgage it held on Lots 67 and 73 of Twin Lakes Estates. It became the mortgagee as a result of a construction loan it gave in 1973 to the Hart Construction Company (Hart) which was to build a house on each lot.

Stewart Title & Trust Company, as trustee of Trust No. 0284, held legal title to these lots for the benefit of the appellees under a written trust agreement. Appellees had sold the lots to Hart by means of a contract for the sale of realty. Examination of the trust agreement discloses that it was an active trust. See *Lane Title and Trust Company v. Brannan*, 103 Ariz. 272, 440 P.2d 105 (1968). Stewart Title and Trust Company also held a note and mortgage on these lots as a result of a loan made to the beneficiaries-appellees.

Home contacted the trustee when it discovered its mortgage did not have priority over the Stewart Title mortgage as had allegedly been agreed upon when Home made the loan to Hart. It asked Stewart to abide by its previous agreement and record a subordination of the Stewart Title mortgage to the Home mortgage so that the foreclosure could proceed.

Lloyd Golder, III, president of Seven G Ranching Company, went to Charles Jackson, then executive vice president of Stewart Title and manager of the trust department, and told him not to subordinate the Stewart Title mortgage. Golder thought that there was a different arrangement with Hart relative to the manner in which the Hart transaction was to be accomplished although he admitted that he never told the trustee nor the escrow agent who handled the Hart sale what his thoughts were. Golder explained to Mr. Jackson, however, how he believed the transaction should have taken place.

Stewart Title did not follow Golder's instructions because it believed that it could not prevail against Home. It recorded a subordination agreement which led to Home wiping out the Stewart Title mortgage in the foreclosure suit. However, since Stewart Title still held the note signed by the beneficiaries, it demanded they pay for the amount owed on the two lots, $4,400, which they did.

The beneficiaries (appellees) then filed this lawsuit and the trial court awarded them $4,400 against the trustee but found in favor of Charles Jackson, other individual defendants and the escrow company.

The trial court gave reasons for its decision. It is clear that its judgments were based solely on the proposition that the trustee was guilty of bad faith when it failed to obey Golder's instructions not to subordinate the mortgage and failed to apply to the court for instructions. It therefore found that it was unnecessary for the beneficiaries to prove a causal connection between the breach of trust and any loss to the beneficiaries and did not resolve any other factual issues.

■ Before discussing the main issue, we first address the trustee's contention that it owed no duty to the beneficiaries when dealing with the Stewart Title mortgage because it was acting in its capacity as mortgagee and not as trustee. We do not agree with this contention. When the trustee "wears two hats", as it did here, and the transaction involved affects the res of the trust, it cannot escape its fiduciary duties by claiming it was acting in its non-trustee capacity. For example, transactions between separate departments of a trust company affecting a trust for which the trust company is the trustee, do not create any immunity against self-dealing as between the trust company and the trust. Cf. *Re Binder's Estate*, 137 Ohio St. 26, 27 N.E.2d 939 (1940); and see Restatement (Second) Trusts, Sec. 170, Comment *d*.

■ As for the main issue, the general rule is that absent any contrary or limiting provisions in the trust instrument, the trustee can properly compromise, submit to arbitration or abandon claims affecting the trust property provided that in so doing he exercises reasonable prudence. *Cogdell v. Fort Worth National Bank*, 544 S.W.2d 825 (C.A.Tex.1976); see also 35 A.L.R.2d 967; Restatement (Second) of Trusts Sec. 192; III Scott on Trusts, Sec. 192. The rule permitting a trustee to compromise and settle claims involving a trust is sound. Otherwise, the administration of the trust would require litigation of every claim by or against the trust. *Cogdell v. Fort Worth National Bank*, supra. If the trustee is in doubt as to whether he should compromise a claim he may ask the court for instructions but is not required to do so. See Restatement (Second) of Trusts, Sec. 192, Comment *d*.

■ If the trustee is not reasonably prudent in compromising or settling a claim against the trust, thus breaching his duty as trustee, the trustee may still avoid liability for a loss if the loss would have occurred in the absence of a breach of trust. The burden of persuasion shifts to the trustee to prove as a matter of defense, that the loss would have occurred anyway. *Estate v. Stetson*, 463 Pa. 64, 345 A.2d 679 (1975). However, where the trustee is guilty of bad faith or self-dealing, a different rule may apply as far as the necessity of establishing a causal connection between the breach of duty and the loss. See *Estate of Stetson*, supra, 345 A.2d at 690, fn. 14. Was there bad faith here when the trustee refused to follow Golder's instructions? In *Barnes v. Lyles*, 110 S.C. 465, 96 S.E. 723 (1918), the trustee failed to file an answer in a mortgage foreclosure. The court stated at 724:

"... Plaintiff's attorneys charge defendant with negligence in the performance of his duty to her in failing to answer Hay's complaint, either for himself or for her, without suggesting, however, any defense which he could have interposed with reasonable probability of success. An attorney or trustee is under no duty to interpose an unmeritorious or frivolous defense for his client or cestui que trust."

[5–7] We cannot conclude that the trustee here acted in bad faith when it refused to follow instructions which it believed to be an exercise in futility. Nor do we find evidence of self-dealing. Generally, self-dealing relates to transactions wherein a trustee, acting for himself and also as trustee, seeks to consummate a deal where self interest is opposed to duty. Typical cases are sales of individual properties to the trust estate or purchase of trust property for his own benefit. *First National Bank of Birmingham v. Basham*, 238 Ala. 500, 191 So. 873 (1939).

Here, both Stewart Title and the beneficiaries had the same interest. Neither desired the Stewart Title mortgage to be foreclosed. Stewart Title gained nothing by subordination of its mortgage. In fact, the

trust agreement provided that the beneficiaries had to reimburse the trustee for any litigation expenses. Therefore, whether the trustee breached its duty by failing to act in a reasonably prudent manner when it subordinated its mortgage and whether the loss claimed was proximately caused by the breach, if any, are issues which remain.

Appellees have filed a cross-appeal. They first contend that the trial court erred in dismissing the case against Charles Jackson. We agree. Any officer who causes the corporate trustee to commit a breach of trust causing loss to the trust administered by the corporation is personally liable for the loss to the beneficiaries of the trust. *Shuster v. North American Mortgage Loan Company*, 139 Ohio St. 315, 40 N.E.2d 130 (1942); IV Scott on Trusts (3rd Ed.) Sec. 326.3 at 2564-65, (where the officer of a corporate trustee causes the breach of trust he is personally liable to the beneficiaries for the loss resulting from the breach of trust if he is guilty of negligence in so doing. *Masonic Building Corporation v. Carlsen*, 128 Neb. 108, 258 N.W. 44 (1934); *Finley v. Exchange Trust Co.*, 183 Okl. 167, 80 P.2d 296 (1938).

The appellees also contend that the trial court erred in dismissing their claim arising out of the trustee's conduct in 1973 relative to the handling of the Hart transaction with the escrow. The trial court found that this claim was based upon negligence and therefore barred by the two-year statute of limitations. See *Crook v. Anderson*, 115 Ariz. 402, 565 P.2d 908 (App.1977). For the first time on appeal appellees contend that the conduct was in violation of the trust agreement and therefore is governed by the six-year statute of limitations applicable to written contracts. See A.R.S. Sec. 12-548. Having failed to assert this theory below, they cannot now present it on appeal. *Barrasso v. First National Bank*, 122 Ariz. 469, 595 P.2d 1014 (App.1979); *Cathemer v. Hunter*, 27 Ariz.App. 780, 558 P.2d 975 (1976); *County of Cochise v. Beckman*, 11 Ariz.App. 19, 461 P.2d 498 (1969).

Appellees have raised two other issues which we need not discuss in view of our disposition.

The trial court's dismissal of appellees' claim arising out of the March 7, 1973, transaction is affirmed. The judgments against the trustee and in favor of Charles Jackson are reversed and remanded for a new trial.

HATHAWAY, C. J., and MONTIEL, Superior Court Judge, concur.

NOTE: Judge BEN C. BIRDSALL having recused himself in this matter, Judge ROBERTO C. MONTIEL was called to sit in his stead and participate in the determination of this decision.