701 P.2d 1205

Alvin JERMAN and Frances E. Jerman, husband and wife; Dennis Bernstein and Helen Bernstein, husband and wife; Fred A. Clement, individually and as surviving spouse of Thelma I. Clement, and Montie L. Furr and Ruth M. Furr, husband and wife, Plaintiffs/Appellees,

v.

George J. O'LEARY and Brigid O'Leary, formerly husband and wife, Defendants/Appellants.

No. 2 CA–CIV 5161.

Court of Appeals of Arizona, Division 2.

March 12, 1985.

Review Denied May 7, 1985.

J. Emery Barker, Tucson, for plaintiffs/appellees.

Seefeldt & Neal by Michael M. Neal, Tucson, for defendants/appellants.

## OPINION

HOWARD, Judge.

This was an action by five per cent of the limited partners of Rincon Country Mobile Home Park, Ltd., against the general partners, appellants O'Leary, to impose a constructive trust or secure damages for an alleged breach of fiduciary duty when appellants secured for themselves 25 acres of unimproved land belonging to the partnership. The case was heard by the court, sitting without a jury, which awarded plaintiffs compensatory damages in the sum of $60,650, $10,000 punitive damages and attorney's fees in the sum of $13,125.

The Rincon Country Mobile Home Park, Ltd., was formed as an Arizona limited partnership in December 1974 with appellants O'Leary as the sole general partners. During the course of its operations the limited partnership acquired 36.46 acres of land adjacent to the mobile home park at a cost of $47,625. This land was not used in the construction of the mobile home park and is the focus of this lawsuit.

There were 38 investors in the limited partnership. The O'Learys owned 62.1 per cent of the limited partnership units. The remaining 47.9 per cent was held by the remaining 36 investors with the five-party appellees owning collectively a five per cent interest.

In December 1978 a sale was made of the mobile home park. The selling price was $4,000,000 on an installment sales basis and thus the limited partnership was not dissolved after the sale, but instead remained in existence with appellants O'Leary continuing to have responsibilities as general partners. The 36.46 acres of undeveloped real property were not included in the sale of the mobile home park and the partnership did not intend to develop the property.

The subject 36 acres were zoned SR, suburban ranch, which allowed placement of one residence for every four-acre area unless cluster development was used. Approximately 11 of the 36 acres were in the Pantano Wash and not usable.

In 1977 appellants filed an application with Pima County on behalf of the limited partnership to have the land rezoned from SR to TH, which permitted the land to be used for construction of a travel trailer park. It was necessary for the partnership, as part of the rezoning process, to convey to the county the 11 acres of land located in Pantano Wash. In August 1977 the county tentatively approved the change in zoning, subject to various conditions being met within two years, including the need to provide suitable sanitation facilities.

In August 1978 appellants became interested in purchasing the 25 acres from the limited partnership and hired an appraiser to determine the value of the land. However, appellants did not inform the appraiser of the zoning change. The land was appraised for $95,000 as SR property as of September 1978. Appellants then asked the accountant for the limited partnership to determine the monies they were entitled to receive in excess of their distributions as

limited partners from the sale of the mobile home park and how payment could be made to the limited partnership which would permit the O'Learys to purchase the 25 acres that were to be sold. The accountant calculated that the limited partnership would receive not less than $110,125 in benefits if appellants forgave certain monies and deferred receipt of other payments. Appellants then offered to purchase the 25 acres from the limited partnership for the sum of $110,125. A letter was sent by appellants to all the limited partners on December 27, 1978. In that letter appellants set forth their desire to purchase the property, the amount of the purchase price and the source of the $110,250. The letter also told the limited partners that if they had any questions to either contact Mr. O'Leary, the accountant for the partnership, or the partnership's attorney.

After the letter was mailed, appellee Jerman gave notice that he believed the land was worth $300,000 to $400,000 premised upon the conditional TH zoning and usage. In response to the Jerman objection, appellants had another letter prepared and mailed to the limited partners. That letter disclosed that the land had been rezoned and that appellees were asserting that the land was worth more money. Specifically, the letter provided:

"A small group of persons owning 22 of the total 464 units of the Limited Partnership have raised an objection to the transfer of the 25 acre parcel of vacant land to the General Partners, George and Brigid O'Leary for the sum of $110,250.00 as described in the previous letter. The unit holders objecting, allege that the land for which Mr. O'Leary has obtained re-zoning, is now worth more money than the price indicated.

While it is possible that the property could be appraised for a higher figure, it was Mr. O'Leary's position that under the circumstances, the price at which the parcel was transferred to him was reasonable and was made in good faith...."

The letter also informed the members of the limited partnership that the O'Learys needed to invest substantial sums of money to develop the property. Consequently, they requested that each limited partner approve or disapprove of the sale so if there was a substantial disagreement the O'Learys could re-evaluate their decision to purchase. The members were informed that if a decision not to purchase was made by the O'Learys it would have an adverse impact on the distributions to be received from the sale of the mobile home park because the O'Learys would not be waiving certain payments owed them nor would certain payments to them be delayed. All the limited partners thereafter approved the sale except for appellees, who did not cast a ballot.

With this approval the O'Learys consummated the acquisition and a deed was issued on March 6, 1979. Appellees accepted the distributions from the sale of the mobile home park, which were more favorable because of the purchase price paid by the O'Learys.

The O'Learys eventually expended the money to meet the conditions imposed by the county to finalize the change in zoning and also spent the money necessary to make the land ready for TH use. The costs incurred were $131,320.92. In addition, there were engineering fees of approximately $12,000, O'Leary's labor of approximately $10,000 and the sum of $37,000 for the construction of a sewer facility before Pima County changed its position and permitted hookups to existing sewer facilities.

At trial, appellants' appraiser, Robert Di-Detrich, M.A.I., testified that the value of the 25 acres as of the time that he appraised them, with the improvements that were necessitated in order to rezone the property, was $325,000 but that the value of the land alone on the date of the sale to appellants was between $100,000 and $125,000.

Testifying as to value for appellees was one of the appellees, Alvin Jerman, a real estate broker. In his opinion the land was

worth between $360,000 and $450,000 on the date that it was acquired by appellants.

Also testifying on behalf of the appellees was Tyler Goodman, a real estate broker. He valued the raw acreage, as of the date of the sale, at $544,973.51. The trial court arrived at its measure of compensatory damage in the sum of $60,650 as follows. Robert Dietrich testified that the current value of the TH zoned property with all the improvements in for mobile homes, was $7,000 per space. Since there were 459 spaces, that meant that the total current value of the land was $3,213,000 Mr. O'Leary testified that he had invested $2,000,000 in the park in improving it. This $2,000,000 was deducted from the current market value, leaving an "equity" in the sum of $1,213,000. Since appellees would be entitled to five per cent of the total, their share in the limited partnership, five per cent times $1,231,000 equals $60,-650.

Appellants contend the trial court erred in finding that they had violated A.R.S. § .29–309(4), and in finding that they had breached any fiduciary duties in its method of arriving at compensatory damages, in awarding punitive damages and in the amount awarded for attorney's fees. We reverse and remand for new trial.

## I.

It was appellees' position in the trial court that appellants were wrongfully self-dealing in the partnership property in violation of A.R.S. § 29–309 which states in pertinent part:

"A general partner shall have all the rights and powers and be subject to all the restrictions and liabilities of a partner in a partnership without limited partners, except that without the written consent or ratification of the specific act by all the limited partners, a general partner

or all of the general partners have no authority to:

\*  \*  \*  \*  \*  \*

4. Possess partnership property, or assign their rights in specific partnership property, for other than a partnership purpose."

It was appellants' position that the articles of limited partnership that were signed by all the limited partners, including the appellees, gave the general partners the right to purchase the 25 acres. Article XVI(7) of the Articles of Limited Partnership states that the general partner may, without the consent of any limited partner,

"(7) acquire, hold and dispose of less than substantially all of the real property, interest therein, or appurtenance thereto, as well as personal or mixed property connected therewith, including the purchase, lease, development, improvement, maintenance, exchange, trade or sale of such properties at such price, rental or amount, for cash, securities or other property, and upon terms which the General Partner shall determine in its sole discretion." [1]

The record shows that by purchasing the 25 acres the general partners did not acquire substantially all the property of the partnership or the interest in real property in view of the interest owned by the partnership, as beneficiaries of the deed of trust involved in the sale of the mobile home park. See *Dunlap Investors Ltd. v. Hogan*, 133 Ariz. 130, 650 P.2d 432 (1982). The consent required by the statute can be found in the express provisions of a partnership agreement. See *Mist Properties, Inc. v. Fitzsimmons Realty Co.*, 228 N.Y. S.2d 406 (N.Y.Sup.1962); *Wasserman v. Wasserman*, 7 Mass.App.Ct. 167, 386 N.E.2d 783 (1979). The rationale is stated in *Wasserman v. Wasserman*, supra:

"... in the absence of an express prohibition, the Act leaves the members of a

1. Appellees argue that paragraph 7 permits the general partner to acquire property for the partnership. However, that authority is granted by paragraph 3 of the agreement which states that the general partners may "from time to time

purchase other lands as the General Partner, in his sole discretion, shall deem necessary or desirable for the conduct of the business of the Partnership."

limited partnership free to determine their rights with respect to each other by any contractual agreement which does not contravene public policy or run afoul of the common law." 228 N.Y.S.2d at 787.

Therefore, appellants had the right to purchase the 25 acres without the consent of any of the limited partners. However, this does not mean that the appellants' obligations toward the limited partners in regard to the property came to an end. A partner stands in a fiduciary relationship to his co-partner. *Hurst v. Hurst,* 1 Ariz. App. 603, 405 P.2d 913 (1965). Instructive and analogous to the case sub judice are those cases which deal with the acquisition by one partner of the other partner's interest in the partnership. One such case is *Alexander v. Sims,* 220 Ark. 643, 249 S.W.2d 832 (1952). There the court stated that the relation of partners is such that in a sale of an interest in the partnership by one partner to another, the utmost good faith must be observed, and the concealment of any important fact or the failure to fully disclose all knowledge affecting the value of the partnership, or the interest proposed to be sold, or any fraud of any kind, would operate to defeat the sale. The same rule applies to the purchase of a partnership asset by one of the partners. Here the appellants were obliged to pay fair market value for the 25 acres and not to conceal from their partners any facts in their possession which would bear upon the question of fair market value. Furthermore, appellants were obliged to reveal any other information regarding the purchase of this property which bore upon its value or the method they were utilizing to pay for it.

■ The record here discloses that appellants not only failed to advise the original appraiser as to the conditional zoning but that they accepted the use of his appraisal knowing that it was not based on current information. The subsequent letter informed the limited partners of the new zoning but the record does not disclose that appellants asked the appraiser to make a new appraisal before they resubmitted

their proposal. These facts coupled with the great disparity of testimony between appellees' and appellants' witnesses on the issue of valuation, could justify a trier of fact in finding that appellants had not acted in good faith and breached their fiduciary duties in paying a price far below fair market value for the property.

## II.

■ Punitive damages can be awarded for a breach of fiduciary duty in a proper case. Cf. *International Bankers Life Insurance Company v. Holloway,* 368 S.W.2d 567 (Tex.1963) (exemplary damages for breach of fiduciary duty by corporate directors and officers where the defendants allegedly acted wilfully, maliciously or fraudulently). In Arizona, punitive damages are based on gross, wanton, malicious and oppressive conduct or on conduct which shows spite, ill will or reckless indifference to the interest of others. *Salt River Valley Water Users' Association v. Giglio,* 113 Ariz. 190, 549 P.2d 162 (1976). We believe there is enough here to submit the issue of exemplary damages to the trier of fact.

## III.

■ Appellants' contention that the trial court erred in its method of computing damages is correct. What the trial court did here was to determine what appellants could sell the property for as fully improved, computed the net profit and then considered it as a profit earned as a result of the breach of that fiduciary relationship. Since appellants had a right to buy the property, the only obligation being on their part to pay a fair price for it, appellees were only entitled to the difference between the price paid and the fair market value of the property. That is a proper measure of damages in this case.

## IV.

■ As far as attorney's fees are concerned, appellants first contend that appellees are not entitled to them since the com-

plaint is premised upon a tort for wrongful conduct amounting to fraud. We do not agree. Because the relationship between the parties was founded on the partnership contract, it is proper to award attorney's fees pursuant to A.R.S. § 12–341.01. See *Sparks v. Republic National Life Insurance Company,* 132 Ariz. 529, 647 P.2d 1127 (1982) cert. denied, 459 U.S. 1070, 103 S.Ct. 490, 74 L.Ed.2d 632.

We do find, however, that the trial court erred in awarding attorney's fees. Although it appears that there was an agreement between appellees and their attorney as to the fees to be charged, the affidavit filed by their attorney did not mention this agreement but instead asked the trial court to use the "lode star" approach in determining attorney's fees. This method is used when fees are not paid on an hourly basis and it becomes incumbent upon the court to establish a formula to construct a reasonable fee under the circumstances. Under the lode star approach the court calculates the product of the hours expended multiplied by a reasonable hourly rate of compensation and adjusts that amount up or down depending upon certain factors. As is pointed out in *Schweiger v. China Doll Restaurant, Inc.,* 138 Ariz. 183, 673 P.2d 927 (App.1983), the lode star method is unnecessary where the parties have agreed that payment for legal services is to be made based upon the attorney's billing rate charged for time actually expended. In such situations the affidavit submitted in connection with the application for fees must indicate the agreed-upon hourly billing rate between the lawyer and the client for the services performed. *Schweiger v. China Doll Restaurant, Inc.,* supra. The trial court here apparently took the number of hours expended by appellees' attorney, multiplied them by his usual hourly rate, and then adjusted the result upward in arriving at the attorney's fees. A.R.S. § 12–341.01(B) states that the award of attorney's fees should be made to mitigate the burden of expensive litigation to establish a just claim or defense and further states that the award may not exceed the amount agreed to be paid. There-

fore, it is vital to know what the agreement was between appellees and their lawyer.

Reversed and remanded for new trial.

BIRDSALL, C.J., and HATHAWAY, J., concur.