224 P.3d 988

**ARIZONA TILE, L.L.C., an Arizona limited liability company, Plaintiff–Appellee,**

v.

**Howard Steven BERGER and Cynthia Berger, husband and wife; John McCarthy, Defendants–Appellants.**

**No. 1 CA–CV 08–0763.**

Court of Appeals of Arizona, Division 1, Department B.

Feb. 2, 2010.

as Amended Feb. 8, 2010.

Berry & Branch, PLLC by Christopher J. Berry, Katherine R. Branch, Phoenix, Attorneys for Appellants.

Lake & Cobb, PLC by Richard L. Cobb, Joel E. Sannes, Joseph J. Glenn, Tempe, Attorneys for Appellee.

## OPINION

WEISBERG, Judge.

¶ 1 Arizona Tile, L.L.C. sold materials on an open account to Designer Surfaces, Inc., an Arizona corporation. Designer Surfaces' board of directors consisted of only two individuals, Howard Berger and John McCarthy. After Designer Surfaces failed to pay it, Arizona Tile filed suit against Designer Surfaces, Berger and his wife, and eventually McCarthy as well. The superior court granted summary judgment to Arizona Tile and denied summary judgment to the Bergers and McCarthy (collectively "the Defendants"). The Defendants appeal from the superior court's rulings that it could exercise personal jurisdiction over them, that they could be personally liable for Designer Surfaces' failure to pay Arizona Tile, and awarding Arizona Tile its attorneys' fees. For the reasons that follow, we affirm the court's personal jurisdiction ruling and its grant of summary judgment to Arizona Tile but reverse the award of attorneys' fees.

## BACKGROUND

¶ 2 Berger and McCarthy were officers and the sole directors of Designer Surfaces, which was in the business of supplying countertops to homeowners who shopped at retail stores such as Costco or Lowe's. The homeowners contracted with and made payment to the retailer, who in turn subcontracted the work to and paid Designer Surfaces for fabricating and installing the countertops. Here, Designer Surfaces purchased the necessary materials from Arizona Tile. Arizona Tile did not enter into a contract with the homeowners. After Designer Surfaces became insolvent, it stopped paying Arizona Tile for materials it had purchased on behalf of various homeowners and for which it had been paid by the retailers.

¶ 3 Arizona Tile filed suit against Designer Surfaces for breach of a credit agreement and unjust enrichment.[1] Arizona Tile later obtained a default judgment against Designer Surfaces.[2]

¶ 4 Arizona Tile's complaint, however, also alleged a breach of fiduciary duty against the Bergers personally based on Arizona Revised Statutes ("A.R.S.") section 33–1005 (2007). The Bergers unsuccessfully moved to dismiss the complaint against them for lack of personal jurisdiction and failure to state a claim. Arizona Tile then moved to amend its complaint to add a similar claim against McCarthy for violation of A.R.S. § 33–1005, and the three Defendants answered the amended complaint.

¶ 5 Arizona Tile next moved for summary judgment on the ground that Designer Surfaces had failed to pay $26,796.57 and that Designer Surfaces, Howard Berger, and McCarthy had diverted to other uses funds they held in trust for payment to Arizona Tile. Arizona Tile further alleged that Berger and McCarthy were personally liable for having failed to pay to Arizona Tile the funds received from the retailers on behalf of the owner-occupants of homes in which Designer Surfaces had installed countertops. Finally, Arizona Tile argued that the breach of fiduciary duty arose out of contract, entitling it to attorneys' fees.

¶ 6 The Defendants also moved for summary judgment. They argued that they could not be personally liable on the credit agreement with Arizona Tile and that no evidence showed that Designer Surfaces' work had been performed for owner-occupied residences for purposes of A.R.S. § 33–1002(A)(2).[3] They additionally argued that § 33–1005 does not require a contractor to separately hold funds received on behalf of

each materials supplier and that no evidence showed any improper use of funds but merely that the funds had been pooled and otherwise expended in the normal course of business. Finally, they contended that A.R.S. § 33–1005 imposed neither a fiduciary duty on corporate directors or officers nor personal liability for breach of a duty to materials suppliers.

¶ 7 In awarding summary judgment to Arizona Tile, the superior court ruled that A.R.S. § 33–1005 applied to these facts and that the case arose out of contract, entitling Arizona Tile to attorneys' fees. Defendants timely appealed. We have jurisdiction pursuant to A.R.S. § 12–2101(B) (2003).

## A.  Personal Jurisdiction

¶ 8 The Defendants first argue that the superior court lacked personal jurisdiction over them and should have granted the Bergers' motion to dismiss the complaint. When a defendant challenges the existence of personal jurisdiction, the plaintiff must come forward with facts establishing a *prima facie* showing of jurisdiction, at which time the burden shifts to the defendant to rebut the showing. *Macpherson v. Taglione,* 158 Ariz. 309, 312, 762 P.2d 596, 599 (App.1988). However, the court should resolve any conflicts "in the affidavits and pleadings" in the plaintiff's favor. *Id.* (citation omitted). We review the superior court's exercise of personal jurisdiction *de novo. Morgan Bank (Delaware) v. Wilson,* 164 Ariz. 535, 536–37, 794 P.2d 959, 960–61 (App.1990).

¶ 9 In their motion,[4] the Bergers contended that they were California residents, had not personally guaranteed Designer Surfaces' debts, and that the complaint failed to allege that they had committed any act or omission in or had minimum contacts with

---

1.  Arizona Tile attached a copy of a statement showing $26,796.57 due based on purchase orders for a number of individual customers.

2.  In partial satisfaction, Arizona Tile garnished the bank account of Designer Surfaces in the amount of $3,669.84.

3.  Arizona Tile, however, had provided affidavits from eleven persons who avowed that they owned their homes before they had purchased granite materials from a retailer and that Design-

er Surfaces had installed the materials in their homes. On appeal, Defendants do not assert that a factual dispute existed regarding whether those who received the supplies from Arizona Tile were residential owner-occupants.

4.  Although the Bergers also argue here that § 33–1005 did not impose a duty on them, that issue is more properly addressed in the summary judgment discussion that follows.

Arizona. They cited *Maloof v. Raper Sales, Inc.*, 113 Ariz. 485, 488, 557 P.2d 522, 525 (1976), to assert that corporate officers or directors are not liable for a corporation's torts unless they authorized or participated in the challenged actions or the corporation was their alter ego.

¶ 10 In response, Arizona Tile submitted documents showing that Howard Berger was the statutory agent, president, and a director of Designer Surfaces, an Arizona corporation, that had been doing business in Arizona for at least ten years, and that he often performed such activities in Arizona. After considering the pleadings and attachments,[5] the superior court denied the motion to dismiss for lack of personal jurisdiction and stated that it would consider summary judgment motions after discovery had taken place.

¶ 11 We have held that personal general jurisdiction may exist over a "nonresident who has 'substantial' or 'continuous and systematic' contacts with Arizona." *Austin v. CrystalTech Web Hosting*, 211 Ariz. 569, 574, ¶ 17, 125 P.3d 389, 394 (App.2005) (quoting *Batton v. Tenn. Farmers Mut. Ins. Co.*, 153 Ariz. 268, 270, 736 P.2d 2, 4 (1987)); *see also Williams v. Lakeview Co.*, 199 Ariz. 1, 3, ¶ 6, 13 P.3d 280, 282 (2000). Here, Howard Berger was regularly physically present in Arizona, had offices and property in Arizona, and systematically transacted business in Arizona. Because he conducted a continuous and systematic business in Arizona, exercise of general jurisdiction by an Arizona court was "reasonable and just." *Perkins v. Benguet Cons. Min. Co.*, 342 U.S. 437, 438, 72 S.Ct. 413, 96 L.Ed. 485 (1952). Accordingly we uphold the superior court's conclusion that it could exercise personal jurisdiction over the Berger Defendants.

¶ 12 After the superior court denied the Bergers' motion to dismiss for lack of personal jurisdiction, Arizona Tile moved to amend the complaint to assert its claims against McCarthy for violation of § 33–1005. Counsel for the Bergers accepted service for McCarthy, and McCarthy and the Bergers jointly answered the amended complaint. Their answer did not again raise the affirmative defense of lack of personal jurisdiction. Because McCarthy never objected to the court's exercise of personal jurisdiction over him, he waived this as a defense. *Morgan Bank (Delaware)*, 164 Ariz. at 537, 794 P.2d at 961 (failure to raise affirmative defense of lack of jurisdiction waives any jurisdictional objection). We next consider the award of summary judgment to Arizona Tile.

## B. Summary Judgment

¶ 13 In weighing the grant of the summary judgment here, we must resolve two issues. First, does A.R.S. § 33–1005 create a trust obligation? Second, if it does, can directors of a corporation be held personally liable if they caused the corporation to breach that trust obligation?

¶ 14 On appeal from summary judgment, we determine *de novo* whether genuine issues of material fact exist and whether the trial court erred in its application of the law. *Orme Sch. v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990); Ariz. R. Civ. P. 56(c). We view the facts and inferences therefrom in the light most favorable to the non-moving party and affirm only if the evidence produced by the non-moving party has so little probative value, given the quantum of evidence required, that no reasonable person could find for its proponent. *Orme Sch.*, 166 Ariz. at 309–10, 802 P.2d at 1008–09; *State Comp. Fund v. Yellow Cab Co.*, 197 Ariz. 120, 122, ¶ 5, 3 P.3d 1040, 1042 (App.1999).

¶ 15 Arizona Tile's motion for summary judgment argued that it had provided materials on credit to Designer Surfaces; that Designer Surfaces had received payment from homeowners for materials that were installed in owner-occupied dwellings; and that Designer Surfaces did not pay Arizona Tile the funds it had received but instead used them to pay other debts. Arizona Tile further alleged that the funds received by Designer Surfaces for the payment of materi-

5. Consideration of these materials did not convert the motion to one for summary judgment. "[A] court may consider affidavits, depositions, and exhibits and conduct an evidentiary hearing if necessary to resolve a rule 12(b)(2) challenge to its personal jurisdiction over a litigant." *Gatecliff v. Great Republic Life Ins. Co.*, 154 Ariz. 502, 506, 744 P.2d 29, 33 (App.1987).

als supplied by Arizona Tile were required to be held in trust pursuant to A.R.S. § 33–1005 and that for the breach of their duties as trustees of those funds, Berger and McCarthy, as officers and directors of Designer Surfaces, were personally liable.

¶ 16 In support of its motion, Arizona Tile offered Berger's deposition testimony. Berger testified in part that in the last few months of Designer Surfaces' operation, he, McCarthy, and an employee decided what to do with the corporation's money, and that they paid suppliers "to facilitate finishing the jobs, but if it wasn't those immediate creditor—or vendor needs, yes, what was left went to the bank." Berger also said that he and McCarthy had signed personal guarantees to two banks and had fully repaid the loan to one of them.

¶ 17 When interpreting a statute, we first look to its plain language as the best indicator of the legislature's intent. *Mejak v. Granville,* 212 Ariz. 555, ¶ 8, 136 P.3d 874, 876 (2006). If we find the meaning of the statutory language clear and unambiguous, we do not employ any other methods of construction. *N. Valley Emergency Specialists, L.L.C. v. Santana,* 208 Ariz. 301, 303 ¶ 9, 93 P.3d 501, 503 (2004). Furthermore, statutes relating to the same subject matter are *pari materia,* and we will construe them with related statutes as one cohesive law. *Pima County by City of Tucson v. Maya Constr. Co.,* 158 Ariz. 151, 155, 761 P.2d 1055, 1059 (1988).

¶ 18 Section 33–1005 states:

*Monies paid by or for an owner-occupant ... to a contractor,* as defined in § 32–1101, *as payment for labor, professional services, materials, machinery, fixtures or tools for which a lien is not provided* in this article *shall be deemed for all purposes to be paid in trust and shall be held by the contractor for the benefit of the person or persons furnishing such labor, professional services, materials, machinery, fixtures or tools.* Such monies shall neither be diverted nor used for any purpose other than to satisfy the claims of those for whom the trust is created and shall be paid when due to the person or persons entitled thereto. The provisions of this section shall not affect other remedies available at law or in equity.

(Emphasis added).

¶ 19 "Owner-occupant" is defined as "a natural person who:"

(a) Prior to commencement of the construction, alteration, repair or improvement holds legal or equitable title to the dwelling by a deed or contract for the conveyance of real property recorded with the county recorder of the county in which the dwelling is located, and

(b) Resides or intends to reside in the dwelling at least thirty days during the twelve-month period immediately following completion of the construction, alteration, repair or improvement ....

A.R.S. § 33–1002(2) (2007).

¶ 20 Section 32–1101(A)(3) (2007) defines "contractor" as a "builder" and includes

*any person, firm, partnership, corporation ..., that, for compensation, undertakes to* or offers to undertake to, ... submits a bid or responds to a request for qualification or ... for proposals for construction services to, *does himself or by or though others,* or directly or indirectly supervises others to: (a) *Construct, alter, repair, add to, improve ... any building ... project, development or improvement, or to do any part thereof ....*

(Emphasis added).

¶ 21 Turning first to the issue of whether Designer Surfaces received the relevant funds subject to a trust obligation, we hold, and Defendants do not dispute, that the corporation was a "contractor" as defined by A.R.S. § 32–1101(A)(3), and that its activities were subject to the provisions of A.R.S. § 33–1005. Those provisions require that the "[m]onies paid by or for an owner-occupant ... as payment for labor, professional services, [or] materials ... shall be deemed for all purposes to be paid in trust and shall be held by the contractor for the benefit of the person or persons furnishing such labor, professional services, [or] materials." A.R.S. § 33–1005 also provides that such "monies shall neither be diverted nor used for any

purpose other than to satisfy the claims of those for whom the trust is created," and "shall be paid when due to the person or persons entitled thereto." Applying the statute's plain language, we conclude that A.R.S. § 33-1005 created a trust obligation upon Designer Surfaces in favor of Arizona Tile, which governed Designer Surfaces' use of the subject monies.

¶ 22 Turning now to the issue of personal liability, Defendants argue that no evidence showed that they decided to pay certain suppliers but not Arizona Tile and that nothing in the statutory language imposes personal liability on corporate officers or directors for a breach of the corporation's fiduciary duties. Arizona Tile responds by pointing out that a corporation can act only through its agents or officers. *See Lois Grunow Mem'l Clinic v. Davis*, 49 Ariz. 277, 284, 66 P.2d 238, 241 (1937). By statute, each corporation must have a board of directors, A.R.S. § 10-801(A), and in general, "[a]ll corporate powers shall be exercised by or under the authority of and the business and affairs of the corporation shall be managed under the direction of its board of directors." A.R.S. § 10-801(B). Moreover, Arizona Tile argues that nothing in the statutory scheme exempts corporate officers or directors from personal liability and that officers and directors may be held liable if they are responsible for a corporation's failure to hold and disburse trust funds as required.

¶ 23 Arizona Tile relies upon *Seven G Ranching Co. v. Stewart Title & Trust of Tucson*, 128 Ariz. 590, 627 P.2d 1088 (App. 1981), in which we held that "[a]ny officer who causes the corporate trustee to commit a breach of trust causing loss to the trust administered by the corporation is personally liable for the loss to the beneficiaries of the trust." Accordingly, although corporate officers and directors are not personally liable for a corporation's misconduct merely by virtue of their positions, they may be held liable if they direct the corporation to commit a breach of trust. *See, e.g., Bischofshausen, Vasbinder, and Luckie v. D.W. Jaquays Min. & Equip. Contrs. Co.*, 145 Ariz. 204, 210-11, 700 P.2d 902, 908-09 (App.1985) (directors are not personally liable for corporation's torts unless they "participate or have knowledge amounting to acquiescence or [are] guilty of negligence in the management or supervision of the corporate affairs causing or contributing to the injury"); *Rhoads v. Harvey Publ'ns*, 124 Ariz. 406, 409, 604 P.2d 670, 673 (App.1979) (courts may exercise jurisdiction over directors or officers and hold them liable for corporate torts if they authorized or participated in the corporation's actions or the corporation is their alter ego).

¶ 24 In *Jabczenski v. Southern Pacific Memorial Hospitals, Inc.*, 119 Ariz. 15, 20, 579 P.2d 53, 58 (App.1978), we acknowledged the nonliability of corporate directors for a tort committed by the corporation unless they participated in or acquiesced in or were "guilty of negligence in the management and supervision of the corporate affairs causing or contributing to the injury." We also held that "[a] director who actually votes for the commission of a tort is personally liable, even though the wrongful act is performed in the name of the corporation." *Id.* (citation omitted). Thus, the status of Berger and McCarthy as officers and directors of Designer Surfaces did not conclusively preclude their personal liability. To the contrary, Arizona Tile provided evidence that Defendants and an employee decided what accounts to pay and failed to pay Arizona Tile at a time that Designer Surfaces should have been holding those funds in trust for Arizona Tile's benefit. Therefore, because Defendants participated in or caused the corporation to breach its trust obligation, they can be personally liable for the loss resulting from that breach of trust.[6]

---

6. In similar circumstances courts in other states have found that exceptions exist to the limited liability enjoyed by corporate officers. *See, e.g., Chem-Age Indus., Inc. v. Glover*, 652 N.W.2d 756, 773-76 (S.D.2002) (officers and directors with discretion in managing corporation have fiduciary duty "to control the corporation in a fair, just, and equitable manner"); *Granewich v. Harding*, 329 Or. 47, 985 P.2d 788, 793-94 (1999) (one who knowingly aids another's breach of fiduciary duty also is liable for the breach); *Charles Bloom & Co. v. Echo Jewelers*, 279 N.J.Super. 372, 652 A.2d 1238, 1243 (App.Div.1995) (director or officer who directs that tortious act be done or participates or cooperates in its commission is liable to third persons injured thereby); *Raines v.*

¶ 25 Our conclusion that a corporation's breach of its trust obligation, as imposed by an Arizona statute, can result in the personal liability of a corporate officer or director is consistent with the reasoning of the Bankruptcy Appellate Panel of the Ninth Circuit in *In re Baird*, 114 B.R. 198 (9th Cir. BAP 1990). There, the court had to determine whether to except from discharge under U.S.C.A. § 523(a)(4) a debt for which the debtor's solely owned corporation had breached the trust obligation created by A.R.S. § 33–1005. *Id.*

¶ 26 David Baird was the president and sole shareholder of a construction company that had hired a subcontractor to do work in a private residence. *Id.* Baird was the only person responsible for disbursing corporate funds. *Id.* at 205. Although the homeowner had paid Baird's corporation in full, the corporation did not pay the subcontractor. *Id.* at 201. After Baird filed personal bankruptcy, the subcontractor challenged the discharge of the underlying corporate debt on the ground that Baird had committed a defalcation "while acting in a fiduciary capacity" *Id.* at 201–02.

¶ 27 The court noted that federal law has defined "fiduciary capacity" to apply only to express or technical trust relationships. *Id.* at 202. To be non-dischargeable, the debt had to "arise from a breach of trust obligations imposed by law, separate and distinct from any breach of contract." *Id.* Thus, "[i]f state law create[d] an express or technical trust relationship . . . and impose[d] trustee status upon the debtor, the debtor w[ould] be a fiduciary under section 523(a)(4)." *Id.*

¶ 28 The court observed that Arizona law did not permit the subcontractor to assert a lien against the homeowners and that no direct contractual relationship existed between the subcontractor and the homeowners. *See* A.R.S. § 33–1002. It also considered the differing federal court interpretations of statutes like A.R.S. § 33–1005 and whether such statutes created express trusts. *Id.* Some courts had found that those statutes that imposed only criminal

penalties did not create a fiduciary relationship, *id.*, while statutes such as New York's, which both designated funds held by a contractor as trust funds and imposed detailed accounting obligations regarding such funds, created a fiduciary relationship that resulted in such debt not being subject to discharge. *Id.* at 203 (citing *In re Kawczynski*, 442 F.Supp. 413 (W.D.N.Y.1977)).

¶ 29 The court viewed the Arizona statute as occupying more of a middle ground because it designated the funds as trust funds but imposed neither criminal penalties nor accounting obligations. *Id.* In that respect, it found the Arizona statute to be similar to the statutes of Michigan, citing *In re Johnson*, 691 F.2d 249 (6th Cir.1982), and of Oklahoma, citing *Carey Lumber Co. v. Bell*, 615 F.2d 370 (5th Cir.1980). It concluded that like the Michigan and Oklahoma statutes, the Arizona statute "create[d] true fiduciary relationships." *Id.* at 203.

¶ 30 The court next considered whether Baird's corporation had committed a defalcation and if so, whether Baird could be personally liable. *Id.* at 204. The court stated that a "defalcation" occurs when a party fails to account for money or property that has been entrusted to it. It held that evidence that the homeowner had paid Baird Construction, which had not in turn paid the subcontractor, established a prima facie case. *Id.* Therefore, without any rebuttal evidence from the debtor, "a defalcation occurred." *Id.*

¶ 31 Finally, the *Baird* court concluded that under Arizona common law, "an officer who causes a corporate trustee to commit a breach of trust causing loss to the trust administered by the corporation is personally liable to the beneficiaries for the loss," citing *Seven G Ranching Co. v. Stewart Title & Trust*, 128 Ariz. 590, 593, 627 P.2d 1088, 1091 (App.1981). It noted that liability is imposed if an officer "knowingly cause[d] the misappropriation of the trust property . . . [and] a breach of trust even if the officer did not personally profit from the transaction." The court reasoned that if the fiduciary relation-

*Toney*, 228 Ark. 1170, 313 S.W.2d 802, 810 (1958) (one who encourages or cooperates in

breach of fiduciary duty is liable for breach).

ship were not imposed upon the corporate officer charged with maintaining the trust relationship, the purpose of § 523(a)(4) would easily be avoided. Therefore, because David Baird "was the only person responsible for disbursing [corporate] funds, ... [he] directly and actively participated in the defalcation and c[ould] be held personally liable." *Id.* at 205.

¶ 32 The same conclusion was reached by the Colorado Court of Appeals when interpreting a statute that provided: "All funds disbursed to any contractor or subcontractor under any building ... contract ... shall be held in trust for the payment of subcontractors, materials suppliers, ... for which such disbursement was made." *Flooring Design Assocs., Inc. v. Novick,* 923 P.2d 216, 217 (Colo.App.1995). The Colorado court upheld the personal liability of the chief financial officer ("CFO") of a corporation that had accepted payment from home buyers but had failed to pay a materials supplier. *Id.* at 218. The court observed that the statute "is to protect homeowners, laborers, and providers of construction materials from dishonest or profligate contractors ... [and thus] imposes duties on contractors to see that the subcontractors are paid." *Id.* at 219. Because the CFO had used funds received from home sales to repay a corporate loan and for other expenses, he had breached his "statutory trust relationship" and was personally liable. *Id.* at 221. *See also Alexander Co. v. Packard,* 754 P.2d 780, 782 (Colo.App.1988) (officer who controlled corporate finances was personally liable for using funds to pay general corporate obligations rather than materials suppliers).

¶ 33 Here, Arizona Tile urged the superior court to find that Berger and McCarthy were the corporate officers responsible for accounting for and disbursing funds and thus were personally liable for breaching the fiduciary duty imposed by § 33–1005 because they failed to pay Arizona Tile the funds that Designer Surfaces had received from or for various homeowners. Defendants responded that the federal court's *Baird* analysis should be restricted to the context of the bankruptcy code and was not binding on Arizona state courts. Although we are not bound by the

*Baird* court's interpretation, Defendants cite no persuasive ground for restricting the case to the bankruptcy setting. They also argued that Designer Surfaces had many employees, three or four of whom were responsible for daily management, five of whom could write checks, and one of whom approved accounts payable. However, remaining unrebutted were those facts that Designer Surfaces had received funds payable to Arizona Tile and that Berger and McCarthy and a former employee directed what bills to pay, but did not pay Arizona Tile.

¶ 34 Designer Surfaces was obliged by A.R.S. § 33–1005 to treat as funds held in trust the monies received on behalf of suppliers like Arizona Tile. The corporation breached its trust obligations by failing to hold those funds for the benefit of its suppliers, by failing to pay those funds over to the suppliers when due, and by using those funds "for any purpose other than to satisfy the claims of those for whom the trust [was] created." Furthermore, Defendants were corporate officers and the only directors of Designer Surfaces; they authorized these wrongful actions and as a result can be personally liable for the damage caused by the corporation's breach of trust. Defendants have not shown that a material question of fact existed that precluded summary judgment, and for the reasons stated, we uphold the superior court's interpretation of A.R.S. § 33–1005 and its application in this case. We therefore affirm its award of summary judgment to Arizona Tile.

## C. Attorneys' Fees

¶ 35 Defendants also contend that the superior court erred in awarding attorneys' fees to Arizona Tile pursuant to A.R.S. § 12–341.01 (2003). We generally review an award of attorneys' fees for an abuse of discretion. *Ofaly v. Tuscon Symphony Soc'y,* 209 Ariz. 260, 265, ¶ 17, 99 P.3d 1030, 1035 (App.2004). If the superior court commits an error of law when exercising its discretion, we may find an abuse. *Fuentes v. Fuentes,* 209 Ariz. 51, 56, ¶ 23, 97 P.3d 876, 881 (App.2004). Additionally, interpretation and application of the attorney fee statute present questions of law subject to *de novo*

review. *Chaurasia v. Gen. Motors Corp.*, 212 Ariz. 18, 26, ¶ 24, 126 P.3d 165, 173 (App.2006).

¶ 36 Arizona Tile argues that the claim for breach of fiduciary duty arose out of a contract, and therefore it was entitled to reasonable attorneys' fees pursuant to A.R.S. § 12–341.01,[7] citing *Jerman v. O'Leary*, 145 Ariz. 397, 402–03, 701 P.2d 1205, 1210–11 (App. 1985), and *Sparks v. Republic National Life Insurance Co.*, 132 Ariz. 529, 543, 647 P.2d 1127, 1141 (1982). In *Sparks,* our supreme court acknowledged that "attorneys' fees may be awarded pursuant to § 12–341.01(A) based upon facts which show a breach of contract, the breach of which may also constitute a tort. The fact that the two legal theories are intertwined does not preclude recovery of attorneys' fees under § 12–341.01(A) as long as the cause of action in tort could not exist but for the breach of the contract." *See also Pettay v. Ins. Mktg. Servs. Inc. (West)*, 156 Ariz. 365, 752 P.2d 18 (App.1987) (tort claim that defendants fraudulently induced plaintiffs to enter contract was intertwined with breach of contract claim); *Jerman*, 145 Ariz., at 403, 701 P.2d at 1211 (tort claim arose from breach of partnership agreement, citing *Sparks* ). However, here the cause of action for breach of the statute is not entwined with breach of a contract between the Defendants and Arizona Tile because there was no such contract.

¶ 37 In *Barmat v. John and Jane Doe Partners A–D*, 155 Ariz. 519, 520, 747 P.2d 1218, 1219 (1987), our supreme court considered whether a successful party may recover attorneys' fees in a malpractice action in which a contractual relationship also had existed. The court acknowledged that some "professionals owe special duties to their clients" that are implied by law rather than by contractual terms. "[B]reaches of those duties are generally recognized as torts" and thus actions to recover for such breaches are not actions "arising out of contract." *Id.* Accordingly, A.R.S. § 12–340.1(A) did not authorize an award of attorneys' fees. *Id.*

■ ¶ 38 Similarly, when the trustee of a living trust succeeded in obtaining dismissal of a suit for an accounting and other relief, this court held that § 12–341.01 did not entitle him to an award of attorneys' fees. *In re Naarden Trust*, 195 Ariz. 526, 990 P.2d 1085 (App.1999). The trustee there argued that the lawsuit arose out of the trust instrument and a divorce settlement agreement, thereby allowing the award of attorneys' fees pursuant to § 12–341.01. *Id.* at 527, ¶ 3, 990 P.2d at 1086. We pointed out, however, that a trust is not a contract, *id.* at 529, ¶ 10, 990 P.2d at 1088, and that the trustee's fiduciary duties are enforceable "even though the trustee received no consideration." *Id.* at ¶ 12. Thus, the trustee's duties "initially stem from the special nature of the relation between trustee and beneficiary [and] . . . although the trustee may be liable for a breach of fiduciary duties, [the] undertakings or promises in a trust instrument are not normally 'contractual.'" *Id.* at 530, ¶ 15, 990 P.2d at 1089.

¶ 39 Here, A.R.S. § 33–1005 directs that designated monies be received in trust, and our common law imposes liability upon the corporation's directors for violating that trust obligation. The source of Defendants' individual liability was not a contract between Arizona Tile and them. Arizona Tile's cause of action and judgment against Defendants personally arose as a result of their breach of the trust obligations imposed by statute. *See Keystone Floor & More, LLC v. Ariz. Registrar of Contrs.*, 223 Ariz. 27, 30, ¶¶ 11–12, 219 P.3d 237, 240 (App.2009) (if action arises from statutory obligations, "peripheral involvement of a contract does not require application of [A.R.S.] § 12–341.01(A)"). We therefore conclude that Arizona Tile's claim for breach of the statutorily-imposed trust relationship did not arise out of contract for purposes of A.R.S. § 12–341.01(A) and vacate the award of attorneys' fees to it.

**CONCLUSION**

¶ 40 For the reasons stated, we affirm the superior court's decision denying the motion to dismiss Arizona Tile's complaint for lack of personal jurisdiction as well as the award of summary judgment to Arizona Tile. Howev-

---

7. The statute provides in part: "In any contested action arising out of a contract, express or im- plied, the court may award the successful party reasonable attorney fees."

er, we vacate the superior court's award of attorneys' fees to Arizona Tile. Because its claim does not arise out of contract under A.R.S. § 12–341.01(A), Arizona Tile is not entitled to an award of attorneys' fees incurred on appeal. *See, e.g., J.C. Penney v. Lane,* 197 Ariz. 113, 119, ¶ 32, 3 P.3d 1033, 1039 (App.1999) (prevailing party on appeal not entitled to fees when issues involved interpretation of statutes and court rules). However, because it has prevailed on the majority of the issues raised on appeal, Arizona Tile is entitled to its costs pursuant to A.R.S. § 12–341 (2003), subject to compliance with Arizona Rule of Civil Appellate Procedure 21.

CONCURRING: PATRICIA K. NORRIS, Presiding Judge and MARGARET H. DOWNIE, Judge.