NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

ALAN SINGER, Plaintiff/Appellant,

v.

MONDEX CORPORATION, Defendant/Appellee.

No. 1 CA-CV 18-0346
FILED 5-2-2019

Appeal from the Superior Court in Mohave County
No.  B8015CV201804018
The Honorable Charles W. Gurtler, Judge

**AFFIRMED**

COUNSEL

Alan Singer, Fort Mohave
*Plaintiff/Appellant*

The Mullan Law Firm, PC, Bullhead City
By Anthony Joseph Mullan, Jr.
*Counsel for Defendant/Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge David D. Weinzweig delivered the decision of the Court, in which Judge Kent E. Cattani and Judge James P. Beene joined.

---

**W E I N Z W E I G**, Judge:

¶1          Plaintiff Alan Singer ("Singer") appeals the superior court's order granting Defendant Mondex Corporation's ("Mondex") motion to dismiss for lack of personal jurisdiction.  We affirm.

### FACTS AND PROCEDURAL BACKGROUND

¶2          This lawsuit concerns a May 2017 contract between two Canadian corporations to recover assets located in Canada.  The contracting parties were Mondex (incorporated in Ontario, Canada), Mercury Terrain & Maison, Inc. (located in Quebec, Canada), and Judith Rottmann (identified as a Quebec resident).  Rottmann was Mercury's President; she entered the contract in her individual and corporate roles.  The contract directed that Mondex agreed to "help recover [certain assets] situated in the Province of Quebec, and possibly elsewhere, which were expropriated and otherwise misappropriated."  It was a contingency agreement; Mondex was promised a 40 percent commission on the assets it recovered.

¶3          Singer is an Arizona resident and Mercury's consultant.  He was the first to inform Mercury that its assets "had been looted by the Quebec government and various business entities."  Singer was not a party to the May 2017 contract, but he did sign the contract as a witness to the transaction, and the contract authorized him to act for Mercury and Rottmann "in the case of her incapacity."  Mondex and Singer had a poor relationship moving forward, and Mondex eventually asked Mercury to "remove [Singer] from the equation."

¶4          Singer alleges Mondex "overlooked millions of dollars" which Mercury could have recovered, and that Mercury cancelled the contract "for non-performance" in November 2017.  Although Mondex apparently found no assets, Singer alleges Mondex still demanded that Mercury pay a 40 percent commission and thousands of dollars in attorneys' fees. Singer filed this lawsuit against Mondex in March 2018.  He

alleged "Mercury and its owner, Judith Rottmann, assigned their right to economic damages against Mondex to [him]," but included no proof of the assignment. He asserted various tort and contract theories against Mondex, including fraudulent inducement, "breach of promise," breach of fiduciary duty, racketeering, interference with contract and prospective economic advantage, negligence, libel and unfair business practices.

¶5        Mondex moved to dismiss under Arizona Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. A supporting affidavit was attached from James Palmer, founder of Mondex, who averred that Mondex was a Canadian corporation with no current or historical Arizona presence (no offices, business, advertising or employees). He further swore that Mondex signed the contract in Canada and had not been served in Arizona.

¶6        Singer opposed the motion. He asserted that Mondex implicitly consented to personal jurisdiction in Arizona in the contract because the contract provided that the "law of Ontario" would apply, and Ontario law does not include a minimum contacts analysis. Singer thus argued that the superior court had specific personal jurisdiction over Mondex. Singer attached his affidavit, his personal bank statement, newspaper articles and circulation statistics, and a list of emails from Mondex to Singer and Rottmann. Neither party requested an evidentiary hearing or oral argument.

¶7        The superior court granted the motion to dismiss with prejudice. Singer moved for reconsideration on various grounds, including that dismissal should have been without prejudice. The court granted Singer's motion only "to the extent that the overall dismissal shall be without prejudice" and Singer could file his claims "in a court of appropriate jurisdiction." Singer timely appealed. We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1) and -2101(A)(3).[1]

## DISCUSSION

¶8        Arizona law permits "long-arm" exercise of personal jurisdiction to the maximum permissible extent under the United States Constitution. Ariz. R. Civ. P. 4.2(a); *Planning Grp. of Scottsdale, L.L.C. v. Lake Mathews Mineral Props., Ltd.*, 226 Ariz. 262, 265, ¶ 12 (2011). Although

---

[1]        We do not address Singer's argument about the dismissal being with prejudice because the court later amended its ruling to "dismiss[] the matter without prejudice."

personal jurisdiction may be general or specific, *Planning Grp.*, 226 Ariz. at 265, ¶ 13, Singer only argues that Arizona courts have specific personal jurisdiction here. The Constitution permits the exercise of specific personal jurisdiction over a nonresident defendant that has sufficient "minimum contacts" with the forum so that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (quotation omitted).

**¶9**      Singer asserts—as he did below—that Mondex cannot contest Arizona jurisdiction because the 2017 contract provides that Canadian law applies, and Canadian law does not require a minimum contacts analysis in determining jurisdiction. We disagree that this contractual provision implicitly creates jurisdiction in Arizona. Moreover, Singer seems to conflate two different types of clauses: forum-selection and choice-of-law. *See Morgan Bank v. Wilson*, 164 Ariz. 535, 537 (App. 1990) ("[P]arties may include contractual provisions for resolving controversies in a particular jurisdiction."). Nor would the fundamental jurisdictional inquiry turn on a choice-of-law clause. *See Hanson v. Denckla*, 357 U.S. 235, 254 (1958) (stating the "issue is personal jurisdiction, not choice of law"). He also argues that jurisdiction is appropriate if Mondex was served with process in Canada because service outside of Arizona "has the same effect as if personal service were accomplished within Arizona." Singer misunderstands Arizona Rule of Civil Procedure 4.2, which does not negate the threshold requirement of jurisdiction. *See Pegler*, 6 Ariz. App. at 340-42.

**¶10**      Arizona may exercise specific personal jurisdiction over a nonresident defendant when the totality of defendant's contacts with this state demonstrate (1) purposeful conduct by the defendant targeting the forum, rather than accidental or casual contacts or those brought about by the plaintiff's unilateral acts, (2) a nexus between those contacts and the claim asserted and (3) that exercise of jurisdiction would be reasonable. *See Planning Grp.*, 226 Ariz. at 266-70, ¶¶ 16, 25, 29, 37; *Williams v. Lakeview Co.*, 199 Ariz. 1, 4, ¶ 11 (2000).

**¶11**      The "minimum contacts" analysis "focuses on the relationship among the defendant, the forum, and the litigation." *Walden*, 571 U.S. at 284-85 (quotation omitted). The "relationship must arise out of contacts that the defendant *himself* creates with the forum State," and "the defendant's suit-related conduct must create a substantial connection with the forum State." *Id.* at 284 (emphasis in original) (quotation omitted).

**¶12**      To survive a motion to dismiss for lack of personal jurisdiction, Singer was required to offer "facts establishing a *prima facie*

showing of jurisdiction." *Ariz. Tile, L.L.C. v. Berger*, 223 Ariz. 491, 493, ¶ 8 (App. 2010); *see also Pegler v. Sullivan*, 6 Ariz. App. 338, 339 (1967) ("The facts, and not the allegations of the complaint, must be the touchstone."). Only then would the burden "shift[] to the defendant to rebut the showing." *Ariz. Tile, L.L.C.*, 223 Ariz. at 493, ¶ 8. We review *de novo* the superior court's ruling on personal jurisdiction. *Id.*

¶13　　　　　Singer did not provide the superior court with enough facts to support Arizona's exercise of specific jurisdiction over a Canadian corporation that contracted with another Canadian corporation and its owner to locate assets in Canada. He maintains on appeal that specific jurisdiction was proper because (1) Mondex directed telephone calls and emails toward Arizona during the negotiation and performance of the contract; (2) Mondex aimed false advertisements and tortious conduct at Arizona, injuring him; (3) Mondex entered into the contract in Arizona; (4) Singer and Mercury performed research services in Arizona under the contract; (5) Singer and Rottmann signed the contract in Arizona; (6) Mondex harmed and defamed an Arizona resident in Arizona; (7) and Mondex's founder visited Scottsdale to speak at the 2018 Genocide Awareness Week, which Singer characterized as a "marketing ploy."

¶14　　　　　We are not persuaded. First, Singer's only evidence of the telephone calls and emails are his affidavit and a list of emails sent by Mondex's founder to him and Mercury's owner in Arizona. But the actual communications are not included, only the information in the email header (sender, recipient, date, time and subject matter line). This index was inadequate for the superior court to examine the content of the communications and determine whether (1) they represented purposeful targeting, rather than responsive or casual contacts, or (2) established a nexus between the contacts and the asserted claims. The subject matter lines are not informative, using descriptions such as "RE:" and "telephone conference re: case." And the emails often indicate Mondex responding to external inquiries rather than vice versa, *Batton v. Tenn. Farmers Mut. Ins. Co.*, 153 Ariz. 268, 274 (1987) ("[T]he requisite minimum contacts are not established when the *plaintiff's action* requires the defendant to send communications into the forum.") (quotation omitted), or communications with people who happen to be in Arizona about a contract between Canadian corporations that never mentions Arizona, *see Smith & Wesson Corp. v. The Wuster*, 243 Ariz. 355, 359, ¶ 18 (App. 2017) (finding no specific jurisdiction where agreement did not show defendant "actively pursued a contractual relationship in Arizona or that it had any ongoing obligations in Arizona").

¶15　　　Second, Singer provides no evidence that Mondex injured him in Arizona, advertised in Arizona, or targeted Arizona or its residents with false advertisements or tortious conduct. *See In re Marriage of Peck*, 242 Ariz. 345, 348, ¶ 7 (App. 2017) ("A petitioner cannot establish a prima facie showing with bare allegations and must come forward with facts, established by affidavit or otherwise, supporting jurisdiction."). Likewise, he never explains how Mondex entered into the contract in Arizona and offers no evidence in support.

¶16　　　Third, specific jurisdiction is not warranted based on facts arising from Singer's or Mercury's conduct rather than from Mondex's conduct, including that Singer might have performed research in Arizona and Rottmann might have signed the contract in Arizona. *Walden*, 571 U.S. at 284-85 (minimum contact test focuses on the defendant and contacts he created with the forum). More generally, the Arizona contacts of Singer and Mercury are not enough to justify the exercise of specific jurisdiction over Mondex. *Smith & Wesson Corp.*, 243 Ariz. at 359, ¶ 19 (plaintiff's contacts with the forum "is not relevant to whether personal jurisdiction can be exercised over a non-resident defendant").

¶17　　　And last, the record does not indicate the remarks of Mondex's founder at a 2018 Scottsdale conference were connected to this lawsuit or the claims asserted herein. *See In re Consol. Zicam Prod. Liab. Case*s, 212 Ariz. 85, 90, ¶ 11 (App. 2006) ("[T]he plaintiffs' cause of action must arise out of or relate to the defendants' contacts with Arizona."). At most, the record includes the sort of "random, fortuitous, or attenuated contacts" deemed insufficient to warrant specific personal jurisdiction. *Walden*, 571 U.S. at 286 (2014); *see also Bristol-Myers Squibb Co. v. Cal. Super. Ct.*, 137 S. Ct. 1773, 1781 (2017) (specific jurisdiction requires a connection between the controversy and forum, and "[w]hen there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State"). We therefore conclude the superior court correctly granted Mondex's motion to dismiss for lack of personal jurisdiction.

¶18　　　Finally, Mondex requests attorneys' fees incurred on appeal under A.R.S. § 12-341.01(A) and A.R.S. § 12-349. We deny its request for fees under § 12-349 because Singer did not bring this action without substantial justification or to harass Mondex. We also deny, in our discretion, an award of attorneys' fees under § 12-341.01(A). Mondex is awarded its taxable costs upon compliance with ARCAP 21.

## CONCLUSION

¶19      We affirm.



AMY M. WOOD • Clerk of the Court
FILED:  AA